NORTH TEXAS CONSTRUCTION COMPANY v. F. J. BOSTICK.

No. 1358. Decided November 17, 1904.

**1.—Injuries to Children—Dangerous Premises—Guarding Against Trespassers.**

The owner of dangerous premises and machinery is not under the duty to guard them against trespassers, though they may be children of immature · discretion. (Pp. 242, 243.)

**2.—Same—Discovered Peril.**

A duty analogous to the doctrine in cases of discovered peril may exist when those in charge of dangerous machinery see a child of tender years intruding into or in close proximity to a place of danger; but such duty would be discharged by warning the child and removing it to a place of safety, and there would be no further duty to keep watch over the premises. (P. 243.)

**3.—Same—Charge.**

In the case of a child injured by machinery in a cotton gin a requested instruction relieving the proprietor from liability, where its employes, seeing the child in danger, had warned and removed it from the premises and it had returned and received injuries without their knowledge, should have been given, there being evidence in support of such theory; and an instruction relieving plaintiff from liability if the child had been warned of danger and had sufficient intelligence to appreciate the warning, was not equivalent; the question as to the child's maturity of judgment did not affect such issue. (P. 243.)

**4.—Evidence—Child—Comprehension of Nature of Oath.**

A child 8 years of age held not to show such knowledge of the consequences of false swearing as to qualify it as a witness, its answers upon this head being apparently mere repetition of instruction given for the purpose of qualifying it. (Pp. 243, 244.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Erath County.

Bostick sued and had judgment against the construction company. The latter appealed and on affirmance obtained writ of error.

*Martin & George* and *Carter & Greene,* for plaintiff in error.—The court erred in permitting the plaintiff in the case to testify as a witness, and to prove by him the manner and circumstances under which he was

injured; because he was not of sufficient age or sufficient intelligence, experience and judgment to understand the nature and obligation of an oath. Greenl. on Ev., secs. 365-367; Rev. Stats., art. 2299.

A party owning property, with or without machinery situated thereon, is not bound or required to exercise ordinary care to prevent children from entering thereon, since children as well as adults are trespassers when they without authority go upon the property of another. Missouri K. & T. Ry. Co. v. Dobbins, 40 S. W. Rep., 861; Missouri K. & T. Ry. Co. v. Edwards, 90 Texas, 65; Barney v. Hannibal & St. J. Ry. Co., 28 S. W. Rep., 1069.

A defendant has the right, in a personal injury case, to have his theory of facts affirmatively presented to the jury and to have such facts as would preclude a recovery grouped and so submitted. Dublin Cotton Oil Co. v. Jarrard, 91 Texas, 293; Missouri K. & T. Ry. Co. v. McGlamory, 89 Texas, 637; Smith v. Wilson & B. Sav. Bank, 1 Texas Civ. App., 115.

The court in substance told the jury that although they might believe that its employes, on being first aware of the plaintiff being in the ginhouse, at once proceeded to take hold of him, put him out of the ginhouse, and told him in substance not to come back in there, or that he might get hurt in the saws or belts, and without the knowledge of the defendants or its employes, or so suddenly as not to give them time to exercise ordinary care to prevent him, he returned into the ginhouse and got his hand or arm in the gin saws and received the injuries, yet they should not find for the defendant unless they further believe that the plaintiff heard said warning and had sufficient intelligence, prudence and discretion to understand the same, that is, to understand the warning given to him. We respectfully submit, that the main charge did not submit this matter correctly to the jury and that the special charge requested did submit it correctly to the jury.

*Eli Oxford* and *Riddle & Keith,* for defendant in error.—The competency or incompetency of a witness to testify is a matter within the discretion of the trial court, and in the absence of an abuse of that discretion his action will not be revised. A witness who knows the penalty for perjury is a competent witness. 3 Jones on Ev., sec. 739; Parker v. State, 33 Texas Crim. Rep., 111; 1 Rice on Ev., 436, 437, 438; 68 Ill., 117; Vincent v. State, 3 Heisk., 120, 414; 23 Minn., 104; Moore v. State, 79 Ga., 498; Davidson v. State, 39 Texas, 130; Brown v. State, 2 Texas App., 115; Missouri K. & T. Ry. Co. v. Johnson, 37 S. W. Rep., 771; Reyna v. State, 75 S. W. Rep., 26; Schouler on Dom. Rel., 526, 527.

It is the duty of those who are operating dangerous machinery not to allow children of tender years to come in contact with the same if they know of the presence of the child about such machinery, and if those in control of such machinery permit an indiscreet child to go into

the house where the same is being operated the law imposes the duty upon the operators of such machinery to take adequate precautions to avoid all accidents. Cook v. Houston D. N. Co., 76 Texas, 357; Evansich v. Gulf C. & S. Ry. Co., 57 Texas, 123; Dublin Cotton Oil Co. v. Jarrard, 91 Texas, 293; San Antonio Traction Co. v. Court, 6 Texas Ct. Rep., 539; 49 Am. St. Rep., 400, and foot notes, p. 414.

GAINES, Chief Justice.—F. J. Bostick, a minor, by his father as his next friend, brought this suit against the North Texas Construction Company, a corporation, to recover damages for injuries which were inflicted upon him by a cotton gin operated by the defendant corporation, and which were alleged to have been caused by the negligence of its servants. The plaintiff recovered a judgment which was affirmed by the Court of Civil Appeals. To reverse that judgment a writ of error to this court has been applied for and granted.

At the time of the accident the plaintiff was about 8 years old, and the defendant was engaged in the business of ginning cotton for the public. The ginstands, of which there were several, were upon a floor of the ginhouse, which was about seven feet from the ground. In front of the door was a platform of about the same elevation of the floor, which was approached by a flight of steps. On the day of the accident the plaintiff came to the ginhouse with his father, who brought a load of cotton for the purpose of having it ginned. While the wagon was being unloaded, which appears to have been done by the suction process, the plaintiff, having become separated from his father, went up into the room where the gins were operated. His presence having been discovered by one Salmon, who was operating the gin and whom we will call the foreman, he was, according to all the testimony, warned to keep away from the gins. He began playing with the cotton seed as it fell from the stands, with the result that his arm was caught and so lacerated by the saws that it had to be amputated above the elbow.

As to the character of the warning which was given to the plaintiff, and as to what was done at the time by the boy and the foreman, there is a conflict in the testimony. Upon this point the plaintiff for himself testified: "I don't know what my papa did while he was in town; when I got back to the gin I went up in the ginhouse; there was nobody went up in the ginhouse with me; what caused me to go up in the ginhouse was I was looking for papa; I went up the stair steps to that little platform there, and went inside the door; I don't know what I saw in there; I saw a man; what he done was just walked along by the ginstands and felt of the seeds; he just put his hand over and felt of them; I just felt of them, too; the man spoke to me, what he said was, 'Little man, stand back; don't get too close.' That is all he said to me; he said that to me just one time; after he said that to me he went along feeling of the seeds, and I went along feeling of the seeds, too; the cotton seeds that I felt of was falling down there; while I was feeling

98 Sup—16.

of them cotton seeds something happened to me; something caught my hand; I don't know what I done when it caught my hand; when I was caught the man had gone on a little further that way; I don't know what he was doing then; all he said to me when he saw me in the ginhouse was, 'Stand back, little man; don't get too close.'" On the other hand, Salmon, the foreman, testified as follows: "I was running the gin-stands at that time. When I first saw the boy he was on the inside just a little bit over on the south side of the ginhouse, west of the door; I walked up to him and told him, 'You must get out of here; if you don't get in the saws you are liable to get in these belts or they might break and hurt you.' And I just turned him back toward the door. I led him myself and he went on the outside of the door. I led him to the door myself, and he went out of the door. I remember about the boy getting hurt. I led him to the door and put him on the outside and then I turned back in the gin and went down to the third ginstand, and there I picked up some loose cotton and walked right back to throw it up in the press, and heard a lumbering noise and went around there and seen him in the second ginstand. I don't know how long it was after I picked up that cotton and carried it over to the press before I heard this lumbering noise, but it was just a mighty short space of time. It was about forty feet from where I left the boy on the platform to where I carried the cotton; I walked that distance and got that cotton in my hand and had it up just ready to throw it up in the press when I heard that noise." As to the warning to the plaintiff and putting him out of the ginhouse Salmon was corroborated by one Bolin, a witness for the plaintiff and an employe of the defendant, who was in the wagon at the time of the accident unloading the cotton and could see into the ginhouse.

Such being the testimony, the defendant requested the court to give the following instruction, which request was refused: "If you believe from the evidence that the plaintiff was ejected from defendant's gin-house shortly before he was injured, and instructed and warned by defendant's agents that said ginhouse or machinery therein was dangerous for small boys and that he could not be permitted to enter or remain therein, and that thereafter without the consent of the defendant or its agents, or so suddenly that they did not have time to prevent it, he re-entered said ginhouse, and while attempting to handle the cotton seed or be about said ginstands he got his hand into the saw, accidently or purposely getting too near them, then he can not recover, and you will find a verdict for the defendant." We think the requested instruction was a correct presentation of an issue made by the testimony and should have been given.

According to the principles announced in Dobbins v. Missouri K. & T. Ry. Co., 91 Texas, 60, and in Missouri K. & T. Ry. Co. v. Edwards, 90 Texas, 65, the defendant did not owe the duty of guarding its prem-ises and machinery against trespassers, even though they may have

been children of very immature discretion. We think, however, that in analogy, at least, to the doctrine of discovered peril, when an employe in charge of the gins saw a child of tender years intruding into a place of danger, or in such close proximity to the machinery that he was likely to so intrude, it became his duty to take steps for its protection. But we are of opinion that this duty would have been performed by warning the child of its danger and by removing it from the room in which the machinery was in operation to a place of safety. It was then no more the duty of the company to place a watchman over it than it was its duty in the first instance to have some one on guard for the protection of such trespassers. If after having been warned and put out of the ginroom into a place of safety the plaintiff returned, without the knowledge of the foreman, and was injured, the company would not be responsible.

However, the Court of Civil Appeals do not hold that the requested charge was not correct, but that it was unnecessary to give it for the reason that the court had given an equivalent instruction in the main charge. In this we do not concur. It is true that one of the paragraphs of the court's charge submits in part the same issue presented in the instruction which was refused. That paragraph is as follows: "You are further instructed that if you believe from the evidence in this case that the plaintiff while in defendant's ginhouse was warned by its employes or employe of the dangers to himself in being there, and that plaintiff heard such warning, and had sufficient intelligence, prudence, and discretion to understand same, and that thereafter without the knowledge or consent of defendant or its employes, or so suddenly as not to give them time in the exercise of ordinary care to prevent him, plaintiff entered defendant's ginhouse and while about the ginstands therein he got his hand or arm in the saws and thereby received the injury of which he complains, then he can not recover, and your verdict will be for the defendant." It is to be noted that the charge given does not submit the case as made by Salmon's testimony; namely, that he warned the plaintiff and put him out of the house; but merely the case of the plaintiff having been warned. Not only this, but the charge given is coupled with the qualification that he (plaintiff) had sufficient intelligence to appreciate the warning. We think so far as pertained to this issue the question of the plaintiff's maturity of judgment did not affect the case.

We also think that the court erred in permitting the plaintiff to testify upon the trial. He was examined before the court in order to test his competency. If nothing had appeared but his examination in chief upon that question, we are of the opinion we could not say that the court did not properly exercise his discretion in allowing him to testify. But his answers upon cross-examination tend to show, as we think, that the only responses which manifested any appreciation of the nature and quality of an oath and the effect of false swearing were given not of his

own knowledge but because of the direction of one of his counsel, who had undertaken to instruct him so as to qualify him to testify. In such a case we think it ought clearly to appear that the answers of a child offered as a witness are given from what he has learned, and are not a parrot-like repetition of what he has been told to say. While we think preparatory instruction of this character is proper, the practice of counsel in the case acting as instructor is not to be commended. We say this, however, without intending to impute any improper motive to the counsel who so acted in this instance. Leaving out the responses to which we have referred and taking all that was developed in the examination, we think it showed a lamentable ignorance on part of the plaintiff as to consequences of false swearing. It is rare to revise the rulings of a trial judge in such cases; but certainly before a ruling, admitting a child of tender years to testify, should be permitted to stand, there should be something to show that he has some appreciation of the wrong of false swearing. It is proper for a witness to be instructed upon these matters; and ample time will elapse for such information before another trial of this case.

The other questions raised by the assignments of error in this court may not arise upon another trial and need not be considered here.

For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*