GULF, COLORADO & SANTA FE RAILWAY COMPANY V. WILLIE COLEMAN.

Decided June 20, 1908.

**1.—Contributory Negligence—Minor—Question of Fact.**

The rule of contributory negligence which applies to persons of mature age and discretion does not apply to young children, and the question whether a child was of sufficient intelligence and discretion to be chargeable with such negligence in walking upon a railroad track in the neighborhood of a switching train, was a question of fact which the court properly submitted to the jury.

**2.—Railroads—Flying Switch—Negligence.**

In a suit by a child against a railroad for damages for personal injuries, evidence considered, and held sufficient to support the finding of the jury that the brakeman on defendant's train was guilty of negligence in failing to keep a proper lookout while the train was making a flying switch, and that such negligence was the proximate cause of the injury to plaintiff.

**3.—Personal Injuries—Pain—Absence of Evidence.**

In a suit for damages for personal injuries the jury is warranted in awarding damages even though there be no affirmative evidence of suffering, when the character of the injury is such that the jury might, from common knowledge, have found that the plaintiff did suffer pain as a result thereof.

**4.—Railroads—Common Use of Track—Duty.**

It is the duty of railroad companies to use ordinary care in operating their trains across and along places on their track that are commonly used by the public as passageways in order to prevent injury to persons using the same.

Appeal from the District Court of Burleson County. Tried below before Hon. E. R. Sinks.

*J. W. Terry* and *A. H. Culwell,* for appellant.—The court erred in failing and refusing to grant this defendant a new trial because the verdict is against the evidence in this: That the undisputed testimony in this case shows that the plaintiff stepped upon the track of the defendant in front of approaching cars, without looking or listening for the same, and that had he done so he would have discovered the approach of the cars that ran over him, and been able to avoid the injury, and that by failing to do so he contributed directly to his injury. Texas & N. O. Ry. Co. v. Brown, 2 Texas Civ. App., 281; Sabine & E. T. Ry. Co. v. Dean, 76 Texas, 73; Gulf, C. & S. F. Ry. Co. v. Wilkins, 32 S. W., 351; Galveston, H. & S. A. Ry. Co. v. Chambers, 73 Texas, 297; Gulf, C. & S. F. Ry. Co. v. Moss, 4 Texas Civ. App., 318; Texas & P. Ry. Co. v. Fuller, 5 Texas Civ. App., 660; San Antonio & A. P. Ry. Co. v. McMillan, 100 Texas, 562; Gulf, C. & S. F. Ry. Co. v. Garrett, 17 Texas Ct. Rep., 562; Eddy v. Sedgwick, 18 S. W., 564; St. Louis Southwestern Ry. Co. v. Shifflet, 98 Texas, 326; Texas & P. Ry. Co. v. McKoy, 90 Texas, 264; Gulf, C. & S. F. v. Rowland, 90 Texas, 365; Culpepper v. International & G. N. Ry. Co., 90 Texas, 634; Galveston, H. & S. A. v. Thompson, 44 S. W., 8.

It is error for the court to render doubtful by its charge that which is not made doubtful by the evidence, and in this case there was no evidence raising the issue as to whether or not this boy stopped and looked

and listened before getting on the track. This was a charge, therefore, on an issue not raised by the evidence. Houston & T. C. Ry. Co. v. Tierney, 72 Texas, 312; Cage v. Heirs of Tucker, 5 Texas Ct. Rep., 535.

This charge was erroneous and on the weight of the evidence, and had no evidence to support it, in this: That there was no evidence of any physical pain suffered by this plaintiff; in fact, the evidence clearly shows that he had not suffered any physical pain. It was, therefore, error for the court to submit this issue to the jury and authorize recovery therefor. Gulf, C. & S. F. Ry. Co. v. Garrett, 17 Texas Ct. Rep., 562.

*Mathis, Buchanan & Rasberry,* for appellee.—The question of the discretion of the child, and the consequent responsibility for negligence, is always a question for the jury to pass on, taking into consideration the age and intelligence of the child. Thompson v. Missouri, K. & T. Ry. Co., 11 Texas Civ. App., 307; Evansich v. Gulf, C. & S. F. Ry. Co., 57 Texas, 128; Avey v. Galveston, H. & S. A. Ry. Co., 81 Texas, 243; Burger v. Missouri Pacific Ry. Co., 20 S. W., 440; Austin R. T. Ry. Co. v. Cullen, 29 S. W., 256; McDonald v. International & G. N. Ry., 86 Texas, 13.

PLEASANTS, Chief Justice.—The appellee, Willie Coleman, by his next friend brought this suit against appellant to recover damages for personal injuries alleged to have been caused by the negligence of appellant's servants. The cause of action alleged in the petition is, in substance, that appellee, a child of seven years of age, was run over and injured by a train of cars on appellant's railroad; that at the time the injury occurred he was walking upon appellant's track at a place where said track was commonly used by the public as a passage way and appellant's agents and servants operating said train knew that it was so used. The only ground of negligence alleged which was submitted to the jury was the failure of the operatives of said train to discover appellee's presence upon the track in time to prevent injuring him.

Appellant answered by general demurrer and general denial, and pleaded specially that appellee was a trespasser upon appellant's track at the time he was injured; that he took no precaution for his own safety, and did not stop to look or listen for the approaching train before he placed himself in a position of peril, and his injury was due to his own negligence in this regard.

The trial in the court below by a jury resulted in a verdict and judgment in favor of plaintiff in the sum of $750.

The evidence shows that the accident in which appellee received his injury occurred at a switch station on appellant's road known as Clay switch. This switch is near a rock quarry and sand pit from which appellant transports rock and sand, and there are several switch tracks used in handling the cars engaged in this business. There are a number of houses near this switch occupied by families, and a number of hands are engaged in working the quarry and sand pit. The switch track upon which appellee was injured is generally used as a walk way by those living near the switch. Shortly before the accident occurred a

local freight train of appellant arrived at this switch and began placing cars that were used in transporting rock and sand.  There were some loaded cars on the track leading to the sand pit and in order to get them out and place them on the proper track the engine with other cars attached to it went in on this switch track and took up the cars desired to be moved.  In order to place these cars where desired a running switch was made, that is, after these cars were attached the train moved forward and when a sufficient momentum was attained the cars to be switched were cut loose and the speed of the balance of the train increased sufficiently to enable it to pass the switch and allow it to be thrown before the detached cars reach it, and said cars be thus placed on another track.

Appellee was walking along the switch track ahead of the train at the time this running switch was made.  He heard the train coming and got off and stood beside the track until the engine and cars attached thereto had passed him and then without knowing that some of the cars had been detached, and without looking to see whether other cars were coming he stepped back on the track behind the cars which had just passed with the engine and, after following the train a short distance, was caught and run over by the detached cars and one of his legs cut off.  At the time of the accident appellee was about seven years of age, and was possessed of the average intelligence of boys of his age and station in life.  If he had looked down the track before going back upon it he could have seen the approaching cars by which he was injured.  The circumstances under which the accident occurred and the surrounding conditions are thus detailed by plaintiff and his witnesses.

Plaintiff testified: "My name is Willie Coleman.  I am eight years old, going on nine.  The train cut my leg off while I was carrying the men some water—a colored man and a white man—I don't know what they were doing, they were sitting down in the cars."  Questioned as to how he came to carry water, he said:  "Mama told me to go and get the chickens some water, and I went to get the water and the two men told me to bring them some water—the train was there; the men were trainmen; a white man and a negro; the negro man told me first; they told me they would give me a nickel to get them some water; I brought it back and went home and carried one bucket and brought the other bucket back to where the men were.  I was carrying it down for the two men; I was coming on down that switch track and the engine come on, and I got off the track and let the engine pass, and then I got back on the track.  I got back on the track to go down and carry the men the water; I was coming on the track and the box cars come on down and knocked me down; I did not see them.  The engine was puffing; I waited until the engine passed; when the engine passed I got back on the track; I did not know there was any box cars around there; the box cars did not have any engine to them; they were loose to themselves; I did not see them at all; I never saw a car run without an engine; when I would go for water for my mammy or daddy I would go on the switch track all the time; there was a path in the middle of the track; there was grass burrs on each side of the track; the cars that hit me came from behind; they hit me back of the head, both of them run over me:

that is what cut my leg off. I was barefooted that day, I don't know how old I was then, I have been to school, but not at that time. I have never done any work in the field. When I went after the water I went down the switch track every time. I have seen somebody else walking up and down that track a whole lot of times." Cross-examination: "Yes, sir, when I was on the stand before I said the negro man asked me to get that water; both of them offered to pay me to go and get that water; the negro man told me first and the white man said, 'Yes, boy, I will give you a nickel, too.' I went down to get the water and came back and they were gone. The engine was fastened to the cars at the time when the men first asked me to get them some water; the engine was just stopping; the engine pushed them in and they stopped down there. When the engine passed me I got off on Mr. Clay's side, I stepped off on one side in the little clean place and I stayed there until the engine passed. I got off and let the train pass. I did not look up the track to see if there was anything else coming. I thought all the things had done gone down; I got back on the track without looking up the track at all."

Hannah Toland, a witness for the plaintiff, testified on direct examination: "My name is Hannah Toland. I was at home when the train run up, and after they uncoupled and made the switch I stopped washing and started to the quarry; and this boy had gone home, and been to carry his mother some coffee down to my house, and had gone home ahead of me. I heard two men tell him: 'Say, little boy, bring us some water and I will give you a nickel,' and the other said, 'Yes, bring us some water and we will both give you a nickel.' I went to the quarry then—then I came back from the quarry, after a while I heard someone say, 'There's a little boy got hurt.' We all went to see who the little boy was. I got there before his mother; there were two men there when I got there, Mr. Hawkins and Mr. Glenn, the brakeman. Mr. Glenn is a colored brakeman; he was there when I got there; he was tying up this boy's legs; the boy's mother came in a few minutes afterwards. I heard a conversation between Ed. Glenn and the mother. He said if he had been in the right place and noticing his business her little boy wouldn't have got hurt. He said he could have prevented it by stopping the cars before he run over him. She asked him how came the boy there, and the boy said, 'Mamma, this man told me if I would bring him some water they would give me a nickel apiece;' that was after the boy got hurt and come to his senses. All the rest that lived on the place (Clay's place) used the track for a passage way; I lived in the house for two years, I used it all the time. It was commonly used by the public as a passage way, both by people and horses; I have seen children walk up and down it and use it as a pathway, I have seen it used as a passage way while the men were switching. I have been on the switch track and the engine passed, and I got back on the track. Mr. Nolan whistled and I got off the track for the cars; Mr. Nolan is one of the brakemen; that was on another occasion. Yes, sir, the switch track is used as a common passage way for the public; I know it because I have seen them walk it myself; every day there was someone walking that track."

George Rippetoe, a witness for the plaintiff, testified: "Q. Well

now, how much would you use this track for a passage way? A. Every day, all times during the day, when the people were coming out to work; when Mr. Clay's people would come to dinner they would come this way, and when they would go out they would go this way, and the quarry men, them that boarded at Clay's house, they would come around the track and keep on to the boarding house. I don't know how many men Mr. Clay worked there at different times; he would work from 25 to 30 and as high as 40 or 50." Cross-examination: "All the people there—that is the way everybody come, and everybody over the flat, and coming to the place they called the depot, and they would come up the track—the switch track."

Rebecca Rippetoe testified: "I went to where my boy was, I found his leg cut off; when I got there Mr. Glenn, a colored brakeman, was there. I asked who in the world was it that told that little boy to get some water, and he said he didn't know; he said he would not have had this to happen for nothing in the world; 'I didn't know he was hit until I passed over him; there was a jar and I peeped over and saw it was him. I certainly hate it.' He told me if he had been in his place that he could have stopped the car from running over the boy." In regard to the switch track as a common passage way she testified: "Everybody uses it for walking and riding, it had been used in that way ever since I have been there; it had been used there when the railroad people were there with the train; I don't know how often I have seen them use the track; I came up and down the switch track to get to the crossing and to go to the well and get the water."

Ed. Glenn, a witness for the defendant, testified on direct examination: "I remember the accident of a little colored boy getting run over at the sand-pit about a year and a half ago. I was on the car at the time the accident occurred; I suppose both cars ran over the boy. I was brakeman on those cars for the purpose of setting the brakes; the brakes were right together in the middle of the two cars; there were no brakes on the front end of the cars; the cars I was riding on were in front of the engine; I did not see the boy before he was struck; I was standing at the brake at the rear car." Questioned as to why he did not see the boy before the cars ran over him, he testified: "I didn't have time to look. I had other business; I had to attend to my work. I never saw anybody along that track; I wasn't looking at that time; I couldn't see anybody on the car (track); I was looking out for the cars; I wasn't looking for any stock or boys; I wasn't setting down on the hind car with my feet hanging over the car; I didn't tell you in the presence of Rippetoe that I was sitting on the back car with my feet hanging over. Yes, the cars were running about three or four miles an hour, that is about as fast as a man walks."

This evidence sustains the finding of the jury that the operatives of the train which injured appellee were negligent in not keeping a proper lookout and in thereby failing to discover appellee's presence upon the track, and that such negligence was the proximate cause of appellee's injury.

In referring to the assignments of error we will number them in the order in which they are presented in appellant's brief.

The first assignment assails the verdict on the ground that the un-

disputed evidence shows that appellee's injury was due to his own neg-
ligence in going upon the track without looking or listening for the
approaching cars. If appellee was an adult person it may be that ap-
pellant's contention, that under the facts in this case he should be
held guilty of contributory negligence as a matter of law, is sound,
but it is well settled that the same rule of contributory negligence which
applies to persons of mature age and discretion should not apply to
young children, and the question of whether appellee was of sufficient
intelligence and discretion to be chargeable, under the facts of this case,
with contributory negligence was one for the jury, and their finding on
that issue can not be disturbed. Evansich v. Gulf, C. & S. F. Ry. Co.,
57 Texas, 128; Avey v. Galveston, H. & S. A. Ry. Co., 81 Texas, 243;
Thompson v. Missouri, K. & T. Ry. Co., 11 Texas Civ. App., 307.

The second assignment assails the verdict on the ground that the
undisputed evidence shows that if the operatives of the train had seen
the appellee when he got on the track that they could not have pre-
vented the injury. When the operatives of the train which passed
appellee first saw him on the track he was only a short distance in
front of the detached cars which were approaching him from behind.
The evidence all tends to show that if the brakeman on the detached
cars had discovered appellee at the time he was first seen by the other
operatives of the train he could not, with the appliances at his com-
mand, have stopped the cars before they reached appellee had he re-
mained on the track. It does not conclusively appear, however, that
if this brakeman had kept a proper lookout and had seen appellee at
the instant he got upon the track that the cars could not have been
stopped before striking appellee. If it be true that the cars could not
have been stopped in time to prevent the injury if appellee had been
seen at the time he went upon the track, it by no means follows that
the accident would have been unavoidable. Had the brakeman seen
appellee, as he might have done by keeping a proper lookout, he could
have given him warning of the approach of the cars and he could have
gotten off the track before the cars struck him. After discovering his
perilous position the operatives of the engine tried to warn appellee
by blowing the whistle of the engine and calling to him, but this warn-
ing was not understood and manifestly could not have been as effective
as a warning given from the cars that were approaching him from
behind of the approach of which he was ignorant. As before stated,
we think the evidence is sufficient to sustain the finding of the jury
that the negligence of the brakeman on the cars which caused the in-
jury in failing to keep a proper lookout and thereby failing to discover
the presence of appellee upon the track, was the proximate cause of
his injury, and the assignment is therefore overruled.

The third assignment complains of the paragraph of the court's
charge in which the issue of negligence on the part of the operatives
of the train in failing to keep a proper lookout is submitted. The
ground of the complaint is that under the undisputed evidence if such
failure was negligence it was not the proximate cause of appellee's
injury. What we have said in discussing the preceding assignment
answers this complaint, and the assignment is overruled.

The fourth assignment complains of the following paragraph of the charge:

"If you believe from the evidence that the plaintiff was walking along the defendant's railway track and that he failed to stop, or look, or listen for approaching cars, and that such failure to stop, or look, or listen, was negligence on his part, taking into consideration his age and discretion, which contributed to cause his injuries, or, if you believe from the evidence that there was a convenient pathway along said track upon which the plaintiff could have walked in safety, and that his failure so to do was negligence on the part of the plaintiff, taking into consideration his age and discretion, then in either event, you are instructed to return a verdict for the defendant."

The objection urged to this paragraph of the charge is that it is upon the weight of the evidence in that it submitted as an issue the question of whether the appellee looked or listened before going upon the track, when the undisputed evidence shows that he did not look or listen, and the jury might have concluded from the charge that the court thought there was evidence from which they could find that appellee did look and listen before going upon the track.

There is no merit in the assignment. It is true that the undisputed evidence shows that appellee went upon the track without looking to see if the cars were approaching from the direction from which the cars that injured him came, and therefore the charge does submit as an issue a question upon which the evidence raised no issue, but we do not think the jury could have been misled by such charge. Taking the charge as a whole the jury could not, in view of the undisputed evidence in the case, have concluded from this paragraph of the charge that the court had any doubt upon this issue. It seems to us to be entirely unreasonable to believe that the jury would have reached such conclusion and have been influenced thereby. The assignment is overruled. St. Louis S. W. Ry. v. Groves, 44 Texas Civ. App., 63.

The fifth assignment cannot be sustained. The appellee testified, as stated under this assignment, as follows:

"It did not hurt me much when they cut my leg off, and nothing hurt me about it afterwards. When the doctor had me, it did not hurt until he went to pull those clothes off. It hurt then. Nothing else about it hurt me."

This is direct and positive testimony that appellee did suffer pain as a result of his injury, and therefore the court did not err in instructing the jury that in fixing the compensation to be allowed appellee they might take into consideration the mental and physical pain suffered by him. If the evidence did not affirmatively show such suffering the character of the injury was such that the jury might, from common knowledge, have found that appellee did suffer both mental and physical pain as a result thereof.

The sixth assignment of error is as follows: "The court erred in giving special charge No. 2, requested by the plaintiff, which charge was as follows:

"Gentlemen of the jury: You are instructed that, under the law of this State, a railroad company is required to use ordinary care in operating its trains across and along places on its track that are com-

monly used by the public as passage-ways, where the employes of such company operating such train have knowledge thereof, in order to prevent inflicting injury upon any one who may be so using such track as a passage way at such place or places." This instruction is legally correct and was not a charge upon the weight of the evidence.

There was no error in refusing the special charges mentioned in the seventh, eighth and ninth assignment. In so far as said charges contained correct statements of the law applicable to the evidence in this case they were included in the charge given by the court. Each of said assignments are therefore overruled.

The tenth assignment complains of the refusal of the court to instruct the jury to find a verdict for the defendant, and the eleventh assignment assails the verdict on the ground that the undisputed evidence shows that appellee was a trespasser upon appellant's track at the time he was injured, and that the operatives of the train by which he was injured as soon as they discovered his peril used every means in their power to prevent his injury, and therefore appellant is not liable for such injury. Our conclusions of fact before stated dispose of both of these assignments, and they are overruled.

We think the judgment of the court below should be affirmed and it has been so ordered.                                   *Affirmed.*

Writ of error refused.