HOUSTON & T. C. RY. CO. v. ROBERTS et al.    (No. 7469.)

(Court of Civil Appeals of Texas. Galveston. Jan. 25, 1918. On Motion for Rehearing, Feb. 28, 1918.)

1. WITNESSES ⟨=⟩45(2)—COMPETENCY OF INFANT WITNESS—QUESTION FOR COURT.

Whether a negro boy, suing railroad for personal injuries, was competent to testify as a witness, in that he understood the nature and obligation of an oath, was a matter resting in the sound discretion of the trial court.

2. WITNESSES ⟨=⟩45(2) — INFANT WITNESS—ASCERTAINMENT OF INTELLIGENCE—COMPETENCY.

When a child of tender years is offered as a witness, it is proper to ascertain whether he has sufficient intelligence and comprehension of the obligation of an oath to be prompted thereby to tell the truth, and if he has intelligence enough to distinguish between good and bad, and to understand the nature and effect of an oath, he should be permitted to testify; the converse also being true.

3. WITNESSES ⟨=⟩45(2) — INFANT WITNESS—INSTRUCTION AS TO FALSE SWEARING.

Where an infant witness is not familiar with such phrases as "the obligation of an oath," "the pains and penalties of perjury," or "the consequences of false swearing," in a proper way he should be instructed in simple terms, and, if he then reasonably understands the difference between right and wrong, that it is wrong to swear falsely, and that he will be punished for it, should be permitted to testify.

4. RAILROADS ⟨=⟩348(2)—INJURIES AT CROSSING—FAILURE TO MAINTAIN WARNING BELL AS PROXIMATE CAUSE OF INJURY—SUFFICIENCY OF EVIDENCE.

In an action against a railroad for injuries to a negro boy, evidence held to show that the boy must have known that a freight train was passing on the track behind him when he stepped backward into it, as he claimed, to avoid another engine, so that the railroad's failure to keep an electric bell at the crossing to warn of the approach of a train, which the boy knew had already partly passed him, could not have been a proximate cause of his injury.

5. RAILROADS ⟨=⟩337(1)—INJURIES AT CROSSING—FAILURE TO KEEP FLAGMAN AS PROXIMATE CAUSE OF INJURY.

The negligence of a railroad in failing to keep a flagman at its crossing was the proximate cause of injuries to a negro boy when he backed into a passing freight train, in an endeavor, as he claimed, to avoid another engine approaching on another track; since, if a flagman had been at the crossing, possibly he could have prevented the boy from going on the tracks at all, or could have induced him to stand still between the two tracks, or have hurried him on across ahead of the approaching engine, or perhaps stopped the freight train before it reached the point of the accident.

6. RAILROADS ⟨=⟩348(7)—INJURIES AT CROSSING—CONTRIBUTORY NEGLIGENCE OF BOY—SUFFICIENCY OF EVIDENCE.

In an action for injuries to a 10 year old negro boy at a railroad crossing when he stepped back into a passing freight train, as he claimed, to avoid a switch engine approaching on another track, in view of the age of the boy, evidence held sufficient to support the finding acquitting him of contributory negligence, though it was not affirmatively shown that for his want of discretion the alleged negligent act of the boy in stepping back into the train was not imputable to him.

7. RAILROADS ⟨=⟩325(1) — "NEGLIGENCE" OF YOUNG BOY—TEST OF PRUDENCE.

If a boy of 10 years, injured at a railroad crossing, acted with the prudence that a child of his age, intelligence, and experience would use under the same or similar circumstances, he was not guilty of contributory negligence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Negligence.]

8. APPEAL AND ERROR ⟨=⟩930(1), 1062(1)—HARMLESS ERROR — SUBMISSION OF ISSUE WITHOUT SUPPORT IN EVIDENCE.

In an action for personal injuries against a railway, where other issues of negligence on which recovery could be based were properly submitted, error in submitting one issue of negligence, without support in evidence, was harmless to defendant, and it will be presumed that verdict for plaintiff was based on the issues supported by evidence rather than on the single issue unsupported.

9. DAMAGES ⟨=⟩186 — LOSS OF SERVICES OF CHILD DURING MINORITY—BASIS TO FIX MONEY VALUE.

In an action by the parents of a boy injured at a railroad crossing, the mere fact that the boy was in good health prior to losing his arm at 10 years of age, standing alone in the proof, furnished no adequate basis on which the

---

⟨=⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

jury could fix the money value of his services to his parents during the balance of his minority.

### On Motion for Rehearing.

10. RAILROADS ☞348(2)—INJURIES AT CROSSING—MANNER OF INJURY.

In an action for injuries to a negro boy at a railroad crossing, evidence *held* to show that the boy stopped and stood between two tracks to let a switch engine go by, and, in attempting to get out of its way, backed into a freight train behind.

Graves, J., dissenting in part.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit by Mary Roberts and others against the Houston & Texas Central Railway Company and others. From judgment against the named defendant, it appeals. Affirmed in part; reversed and remanded in part.

Baker, Botts, Parker & Garwood and McMeans, Garrison & Pollard, all of Houston, for appellant. W. J. Howard, Clarence Kendall, and Rowe & Kay, all of Houston, for appellees.

GRAVES, J. An admittedly correct general statement of this case is thus made: Benjamin Roberts, a negro boy about 10 years old, lost his right arm under the wheels of a car of a moving freight train, and brought this suit by Isaac Roberts and Mary Roberts, his father and mother, as next friends, against the Houston & Texas Central Railway Company, the Texas & New Orleans Railroad Company, and the Galveston, Harrisburg & San Antonio Railway Company, to recover therefor, laying his damages at $20,000. In the same suit his parents sought a recovery on their own behalf for the loss of the earnings and services of their son from the time of his injury to the date of his majority, laying their damages at $2,500. The suit was dismissed by the plaintiffs as to the defendants Texas & New Orleans Railroad Company and the Galveston, Harrisburg & San Antonio Railway Company, and they passed out of the case. A trial before a jury resulted in a verdict and judgment against the Houston & Texas Central Railway Company, in favor of the minor, for $1,500, and in favor of his parents for $500. From this judgment it has appealed.

After charging that the railway company was operating the freight train inside the limits of Houston, plaintiffs alleged:

"At a point near Trentham street, in said city, and while the said train was going in eastwardly direction, at a rate of about 15 miles per hour, it crossed the said Trentham street, or a street or way known and designated as Trentham street, which is a very much used public street, over which pedestrians and vehicles are constantly passing; that shortly prior to the time the said engine and cars had reached Trentham street, at a point where the track along which it was then and there traversing intersects said street, the said Benjamin Roberts, who was on said street, had started to cross defendant's tracks which cross said street, when he was struck by the engine or one of the cars of said train, or some projection therefrom, and knocked down and his arm was drawn under the wheels or other portion of the said engine, or locomotive, or cars, and severed from his body at or near the shoulder joint, or his arm was so mashed and injured that it became necessary to amputate the same, and same was amputated as a result of such injury, and his whole body was otherwise seriously bruised and injured."

Recovery was predicated upon the alleged negligence of defendant, in substance: (1) In operating the train at a point within the limits of the city of Houston at a rate of speed in excess of six miles per hour, contrary to an ordinance of the city which forbade a greater rate of speed; (2) in failing to keep a watchman or flagman at the crossing to indicate to persons about to cross that a train was approaching; (3) in failing to keep and maintain an electric bell or other device at the crossing for the purpose of warning persons in general, and the minor in particular, of the approach of trains; (4) in failing to sound the whistle or bell as the train approached the crossing to warn the minor or other persons having occasion to cross the tracks of the approach of the train.

The railway company pleaded the general issue and contributory negligence of the minor and of his parents. The court did not submit the first of these grounds of negligence to the jury, and it passed out of the case.

[1] By its first assignment of error appellant insists that the court erred in permitting the plaintiff Benjamin Roberts to testify as a witness, upon the ground that he did not understand the nature and obligation of an oath. This was a matter that rested in the sound discretion of the trial court, and, after a very careful reading of the record, we are unable to say that any abuse of that discretion, in permitting the boy to testify, was shown. That court having had opportunity to observe him, and having heard his testimony upon his examination, and his manner of answering questions, was in a better position to determine the qualification of the boy to testify than is an appellate court. The boy was twice upon the witness stand, and in qualifying the bill of exceptions allowed to the ruling in holding him qualified to testify the court said:

"On his second examination he freely told the facts as to the instructions received by him from his mother, and in both examinations impressed the court with the fact that he was disposed to tell the truth as he understood it to be; that he knew what a lie was; and that he would be punished if he told a lie on the stand."

[2] We can neither say that the evidence touching the boy's qualifications did not fully justify that conclusion, nor that, if it did, he was not a competent witness. The rule is that, when a child of tender years is offered as a witness, it is proper to ascertain

whether he has sufficient intelligence and comprehension of the obligation of an oath to be prompted thereby to tell the truth. If he has intelligence enough to distinguish between good and bad, and to understand the nature and effect of an oath, he should be permitted to testify. The converse of this is equally true. Schouler, Dom. Rel. pp. 526, 527; 1 Greenleaf, Ev. § 367.

[3] We do not think the purpose of this rule would be subserved by disqualifying every youthful witness who could not explain the meaning of such terms as "the obligations of an oath," "the pains and penalties of perjury," or "the consequences of false swearing"—expressions which even adults would often find difficult of ready definition; but that, in instances where it appears that he is not familiar with such phrases, he should in a proper way be instructed in simple terms, and if he then reasonably understands the difference between right and wrong, that it is wrong to swear falsely, and that he will be punished for it, he should be permitted to testify. This, we think, the effect of the holding in North Texas Construction Co. v. Bostick, 98 Tex. 243, 83 S. W. 12. The assignment is therefore overruled.

The second, fourth, sixth, seventh, eighth, and tenth assignments in varying forms, so couched as a result of different steps and procedure taken upon the trial, in net result and effect make the same final attack upon the judgment; that is, that no such negligence of appellant as could have been the proximate cause of the accident and injuries was shown. This general contention is summarized in the tenth assignment as follows:

"The verdict of the jury and the judgment of the court based thereon are contrary to the law and evidence in this, that the undisputed evidence shows that Benjamin Roberts, at the time of the injury, had crossed over all the tracks of the defendant, except the north switch track, and was standing near the most northern track, passing along and beside the plank fence of the defendant company, and the switch track that led into the yards of the defendant company, and that Benjamin Roberts at the place as testified to by him and other witnesses was in a safe position, and that the failure to ring the bell or to have an automatic bell or other device, or to blow the whistle, or to keep a watchman or flagman at said crossing, could not have been the proximate cause of the accident and injuries, in that Benjamin Roberts testified that, by reason of a switch engine coming out of the yards, he stepped backwards and into a freight train that was passing, and that the engine and several cars in said train had already passed at the time he stepped backwards into said train, and that his injuries were produced by stepping backwards into and against the passing train, and, this being true, the negligence of the defendant, if any, could not have been the proximate cause of his accident and his injuries."

In other words, conceding the negligence of appellant in all the respects mentioned in the assignment, there was still no liability, because it could not have been the proximate cause of the boy's injuries. But after a careful consideration of the evidence we are unable to accept this conclusion, and think that at least one ground of negligence proximately causing the injury was both pleaded and proved: The failure to keep a watchman or flagman at the crossing.

There were only two theories as to how the accident happened, and they were directly conflicting. The boy, Benjamin Roberts, testified that while he was attempting to cross appellant's tracks from the south going north, at what is admitted to be a public crossing, he had passed over the main line track, when, in attempting to get out of the way of a switch engine moving westwardly along another track next to and adjoining the main track, he backed into the freight train moving eastwardly along the main line track, and was knocked down by it. In this statement he is corroborated by Janie Riggs. It is true that she said he was struck by a pipe on the refrigerator car, but that did not necessarily impair her testimony that he was hit by the freight train on the main line while backing away from the switch engine on the track parallel to and adjoining the main line, because the projecting refrigerator pipe was of course a part of the train.

The railway company's witnesses, upon the other hand, swore that there was no switch engine passing there toward the west at all at the time, but that the boy ran from the north side across the first track over to, and tried to hop on, the freight train going by toward the east, catching hold of the ladder and trying to get on the train, but stumbled and fell under it. The jury saw fit to reject this latter theory, and we are not, therefore, further concerned with it.

The two tracks along which these two oppositely moving trains were thus found to be running were quite close together at the place of the accident; being about five feet apart. It is undisputed, also, that the engine and several cars of the freight train had already passed the boy before he was struck.

[4] While the jury seems to have found, in response to special issue No. 30 submitted at the request of the railway company, that he did not know the freight train was thus passing behind him at the time he stepped backward into it, the majority of this court think that was an impossibility under the evidence, considering his close proximity to it, and therefore that the failure to keep an electric bell at the crossing to warn the boy of the approach of a train he then knew had already partly passed him could not have been a proximate cause of his injury; the writer, however, dissents from this view, believing there was room under the evidence for ordinary minds to differ upon the question of whether or not, in the probable excitement of avoiding the switch engine in front, the boy might have been oblivious of

the presence of the freight behind during the few seconds required for its first four cars to pass him, and, if he was, then that the clanging of an electric bell, or other signal system, might have warned him. in time to have escaped injury.

[5] But, however that may be, there is no contrariety of opinion as to the effect of the other act of negligence the jury found appellant guilty of—its failure to keep a flagman at that crossing. If one had been there, he could either have prevented the boy from going on the tracks·at all until the freight had passed, or hurried him on across ahead of the switch engine, or induced him to stand still between the two tracks, or possibly have stopped the train before it reached the point of the accident. M., K. & T. Ry. Co. v. Magee, 49 S. W. 156, affirmed by Supreme Court, 92 Tex. 620, 50 S. W. 1013. The grouped assignments raising the question under discussion are accordingly overruled.

[6, 7] Under its fifth assignment appellant contends that the boy was guilty of contributory negligence—

"in that he was either injured by hopping the train of the defendant and being thrown under the wheels of the train, or else that he carelessly and negligently stepped back against a moving freight train and was thereby thrown under the wheels of the train."

But the jury discarded the suggestion that he hopped the train, as has been above mentioned, and then further acquitted him of contributory negligence in backing into it under the circumstances they found he did. Appellant's insistence, however, is that since the 10 year old boy, Benjamin Roberts, was neither within that tender age at which the courts would, as a matter of law, hold him exempt from the charge of contributory negligence, nor yet old enough to be likewise held absolutely responsible for his acts, the question was one for the jury to determine from the evidence before them, and because (as the railway company contends) the plaintiffs did not affirmatively show that, for want of discretion, the negligent act of the boy in stepping back into the train was not imputable to him, it was entitled to a peremptory instruction. The following cases are tendered in support of this position: Railway v. Shiflet, 94 Tex. 139, 58 S. W. 945, and authorities cited; Dowlen v. Texas Power & Light Co., 174 S. W. 675; Waterworks v. White, 44 S. W. 181.

In so far as expressions in those opinions may approve the principle invoked by appellant, we think they were being applied to a very different state of case; that is, where it was sought to excuse the child entirely on account of his age from the effect of acts so plainly wrong that it would be presumed he knew better than to do, unless lacking in that degree of intelligence a child of his age would ordinarily have, as where an 11 year old boy of average ` intelligence,

being a trespasser thereon, went to sleep upon a railroad track, or where a 13 year old boy of like intelligence, after express warning not to do so, picked up a live electric wire; in such instance, to excuse him, it must be shown that he did not have sufficient intelligence and discretion to understand and appreciate the danger. All those cases recognize, however, that a different rule obtains in a case like this one, and in the latter two the authorities so holding are tabulated. This accident happened at a very public and much-used crossing within a populous city, upon which the injured boy, along with the public generally, had the right to go, and between two moving trains going in opposite directions upon tracks only about five feet apart, and with no watchman to warn those using the crossing of the danger of approaching trains.

The contention of appellant as attempted to be applied here is fallacious, we think, in that it assumes this boy's act was negligent, without taking into consideration his immature years at all; while we are not prepared to concede that, under the facts shown, it would have been negligence as a matter of law had he been an adult, yet that might be admitted, and still it would not necessarily be so as to a child of his age, for the reason that what is negligence in an adult is not always such in a child. We think the trial court made the proper distinction in the tenth paragraph of his charge to the jury, as follows:

"In passing upon the question of whether or not Benjamin Roberts was guilty of contributory negligence, you are instructed that if you find that he acted with the prudence that a child of his age, intelligence, and experience would use under the same or similar circumstances, then he would not be guilty of contributory negligence."

This test has been often approved in similar cases, and since in response to it the jury, in its general verdict for appellees, upon what we deem to be ample evidence, acquitted the boy of contributory negligence, the assignment assailing that finding cannot be sustained. Evansich v. Railway, 57 Tex. 128, 44 Am. Rep. 586; Cook v. Navigation Co., 76 Tex. 358, 13 S. W. 475, 18 Am. St. Rep. 52; Railway v. Fletcher, 26 S. W. 447; Railway v. Mother, 5 Tex. Civ. App. 87, 24 S. W. 82; Thompson v. Railway, 32 S. W. 192; Railway, v. Coleman, 51 Tex. Civ. App. 415, 112 S. W. 693.

The third assignment is devoid of merit, and is overruled without discussion.

Complaint is made in the ninth assignment that there was no evidence of any failure of appellant's employés to ring the bell on the engine as it approached the crossing, in that the undisputed testimony showed the bell was ringing, and that the court erred in submitting the question of such failure as an issue to the jury.

[8] We are doubtful as to whether there was sufficient support for the submission of

this question; but there having been other proper issues of negligence submitted upon which a recovery could be based, and which were supported by evidence, it will be presumed that the verdict was based on these rather than upon the single issue not so supported, and, if there was error in submitting the question as to whether or not the bell on the engine was rung, it became harmless. T. & N. O. Ry. Co. v. Siewart, 163 S. W. 624; Southern Ry. Co. v. Shinn, 153 S. W. 639; G., H. & S. A. Ry. Co. v. Watts, 182 S. W. 413, writ of error refused. The assignment is therefore overruled.

[9] The eleventh and last assignment presents as error the allowance of a recovery of $500 to Mary and Isaac Roberts, the parents of the boy, upon the ground that there was no evidence to show that the boy, Benjamin Roberts, would have earned any money, or would have been of any pecuniary benefit or assistance to his parents from the date of the accident until he reached his majority, had he not been so injured.

Such is the state of the record, and the assignment must be sustained; the mere fact that the boy was in good health prior to losing his arm at 10 years of age, standing alone as it did in the proof, furnished no adequate basis upon which a jury could fix the money value of his services to his parents during the balance of his minority, because, had he not been injured, despite his youth and good health, he might have been a financial burden rather than a help to them for that entire period.

From the conclusions announced, it follows that the judgment of the court below should be in all things affirmed as to the minor, Benjamin Roberts, but reversed and remanded for another trial as to the parents, Mary and Isaac Roberts, upon the one issue of what amount of money, if any, the minor would have contributed, or would have been worth, to them during his minority, and it has been so ordered.

Affirmed in part, and in part reversed and remanded.

### On Motion for Rehearing.

A plethora of motions has greeted the reconsideration of this case; rehearings being asked respectively by appellees Isaac and Mary Roberts, and appellant railway company, while the latter has also by separate application requested other and additional findings of fact.

Unconvinced that error was committed in our former judgment, it will be adhered to, and both motions for rehearing are overruled; occasion is here taken, however, under the aid given us through appellant's criticism of it, to somewhat modify this expression in the original opinion:

"If one [meaning a flagman] had been there, he could either have prevented the boy from going on the tracks at all until the freight had passed, or hurried him on across ahead of the switch engine, or induced him to stand still between the two tracks, or possibly have stopped the train before it reached the point of the accident."

The language used makes a broader statement of what might have been the result of then having a flagman present at the crossing than was in mind; it was not intended to therein find as an actual fact that he could have prevented the accident in each and all of the detailed ways mentioned in the quoted sentence, but only that he both might and could have warned the boy of his danger, in some one or possibly more of the ways indicated, and in all probability have thereby prevented the injury.

The appellees Isaac and Mary Roberts urge that the record did contain sufficient facts upon which the jury could reasonably estimate the financial benefits they would probably have received from their minor son until his maturity, citing in support of their view the cases of Brunswig v. White, 70 Tex. 504, 8 S. W. 85, and Railway Co. v. Measles, 81 Tex. 474, 17 S. W. 124.

But when the facts in those cases are compared with what appears in their own, plainly the same rule of law could not apply to both; in the White Case the action was by the parents for the death of a little six year old daughter, who, in addition to being bright and intelligent and in good health, was shown to have performed much valuable service in helping her parents operate a dairy; her mother testifying:

"She was of great assistance about the house. She aided me in taking care of my baby, then about a year old; she helped to wash the dishes, and swept the house, and rendered other important services about the house. We were poor people and all of us worked."

A similar condition in effect likewise obtained in the Measles Case, as we read the opinion; there the mother had sued on account of injuries to her seven year old son, and, to use the language of the court:

"It had been shown that the boy was obedient and healthy; that he was therefore both willing and able to work; and hence that his services would be as valuable at least as those of an average boy."

There had then been given testimony as to the average value of the services of boys of about his age, which the court said might have been unnecessary, but certainly was neither impertinent nor improper.

As stated in our original opinion, no such proof was made in this case; the sole fact shown being that his boy was in good health before his arm was cut off; that was an insufficient basis for the award given his parents.

On the application for further fact findings in abundance of caution that no injustice on that account be in our opinion done appellant, we cheerfully enlarge upon the former findings as follows: The distance between the tracks upon which the two oppositely moving trains passed each other was stated as about 5 feet; the railway company challenges this statement as not being sup-

ported by the evidence, insisting that it was shown to be 20 feet. After re-examining the record, however, we find no direct testimony specifically fixing this particular distance in feet, and therefore modify our former statement to that extent; but it does appear that the space was a very narrow one, and Janie Riggs, an eyewitness of the accident, and the only witness whose testimony covered the point, repeatedly stated that when she first saw the boy, just before he was hit, he was standing between the two tracks on which the trains were thus moving, and that the switch engine was about 4 or 5 feet from him; she then continues:

"At one place it is as far as to the railing in this room between those two tracks, but at this place you cannot walk betwixt them. I did not see the boy do anything just before he was hit, but just waiting there. I guess he was waiting to get across. At the time the switch engine was four or five feet from the boy there was a freight coming in on the main line track. The engine and some cars of the freight had passed the boy at that time. The boy was facing the switch engine at the time he was struck; I did not at any time see the boy on the track that the switch engine was on. After he seen the switch engine was coming in, the boy moved out of the way of the switch engine, because it was a narrow space at the crossing, across the road. The tracks run so close together he had to stand further up in the yard to go across. * * * The freight was coming in, and he was too close to the switch engine and he got out of the way and got too close to the freight. The way he got out of the way was, he just stepped back a little bit from where he was standing."

It is true that on cross-examination, when shown a map made by one of appellant's witnesses, which he testified was drawn to a scale of 20 feet to the inch, she attempted to approximately indicate thereon the relative positions of the two tracks, the switch engine, the freight train, and of the boy at the time, but we do not think this, as against her previously mentioned direct statements about the distance, made from her own observation and knowledge, would justify a finding that the tracks were approximately 20 feet apart, although the plat may have shown about an inch of space between them.

In its motion now under consideration appellant requests that, in lieu of this court's statement of the facts immediately surrounding the injury of the boy, as appearing in its opinion, substantially the following findings be made:

"Benjamin Roberts lived on one side of the railroad tracks, which were laid in a public street, and a store was situated on the opposite side. Benjamin Roberts' aunt sent him to the store to buy some onions, and when he returned his mother immediately sent him back again to buy some onions for her. It was in performance of this errand that he was hurt. When his mother sent him back to the store, he proceeded to the street in which the tracks were laid, and crossed over the main line track, and then saw coming out of the yards from the east a switch engine, going to the west, and he stood there between the main line track, and the track on which the switch engine was coming, looking at the switch engine for the space of time, vari-ously estimated at from two to ten minutes. While he was standing between the tracks and while the switch engine was approaching him, a heavy freight train going eastward reached him, and the locomotive and four cars passed him by the time the switch engine got to where he was standing, and he then backed away from the switch engine and into the fifth car of the freight train, which knocked him down and ran over his right arm, necessitating its amputation near the shoulder."

[10] We are unable to comply with the request and so find, for the reason that in the main, if not the only material, respect wherein the suggested statement differs from our own, it assumes that the boy first stood loitering between the two tracks looking at the switch engine coming toward him for from two to ten minutes, and then when, after that length of time, it got to where he was, he backed away from it and into the freight train; such is not our understanding of the effect of the evidence; the boy himself more than once testified that he stopped and stood waiting there to let the train (meaning the switch engine) go by; it is true he said he stood there some four or five minutes, but that probably meant nothing more than his method of estimating a brief period of time.

The same may likewise, we think, be said of the statement of Janie Riggs that it was some ten minutes between the time she first saw him standing there and the time he was hurt, if, indeed, she did not first see him there when he was making a prior trip to the store to the one during which the accident occurred; for the proof is undisputed that he made two like trips from his home to the store only a few minutes apart; moreover, the boy's mother testified that it was only two or three minutes after she sent him to the store that they called to her he was hurt; this was on his second trip, because his aunt had sent him the first time.

We therefore think the fair construction of the testimony, taken as a whole, is that the boy stopped and stood between the two tracks for the purpose of letting the switch engine go by, and, in attempting to get out of its way, backed into the freight train behind.

Pursuant to these conclusions, the corresponding orders have been entered upon the several motions discussed.