## No. 5716

## L. N. BRUNSWIG & CO. *v.* E. L. & C. E. WHITE.

1. DAMAGES—EVIDENCE—NEGLIGENCE.—In an action by parents to recover damages for the loss of the services of their child caused by the negligence of another, *held:*

    (1) When the killing of the child is wrongful, the parents are entitled at least to nominal damages.

    (2) When the testimony shows the bodily health and strength possessed by the child when it was killed, its sprightliness of mind or want of it, its aptitude or willingness to be useful in performing service, the manner in which its faculties were exercised, in useful labor or otherwise, and when from its age and undeveloped state any estimate of value for its services no particular knowledge in the way of expert testimony can be procured better than the judgment and common sense of the ordinary juror called to the duty of determining such value then upon such testimony, the sound discretion of the jury can be relied on to determine such value without any witness naming a sum.

3. CASES REVIEWED.—Railroad v. Nixon, 52 Texas, 24; Railroad v. Cowser 57 Texas, 304; Railroad v. Kindred, 57 Texas, 508; Potter v. Railroad, 21 Wisconsin, 374; City of Chicago v. Mayor, 18 Illinois, 359; City of Chicago v. Hesing, and Railroad v. Beeker, 84 Illinois, 486, reviewed.

4. TRIAL BY JURY.—Juries are required by the organic law of the State and the courts can not presume that they are composed of other than intelligent men, nor will the Supreme Court call that an error of instruction which to the court is intelligent and right.

ERROR from Tarrant. Tried below before the Hon. A. J. Booty.

In this case the chief objection to the charge of the court was to the following portion of it: "And the value of the child's services during the period of her minority is to be ascertained by you as best you can from your own judgment, common sense and sound discretion, and the evidence before you."

*Ball & McCart,* for appellant: The court erred in overruling the defendant's general demurrer to plaintiff's petition, because said petition did not show any privity of contract between defendant and plaintiff or plaintiff's intestate, nor did the same show any such connection between plaintiffs or their decedent and defendant's alleged negligence as would entitle plaintiffs to

recover. (Whart. on Neg., 2 ed., sec. 134; Davidson v. Nichols, 11 Allen, 514; Thomas v. Winchester, 6 N. Y. (2 Selden), 397; Losee v. Clute, 51 N. Y., 494; Langridge v. Levy, 2 Mee. & W., 519; Longmaid v. Holliday, 6 Exch., 761, 765; Winterbottom v. Wright, 10 M. & W., 109.)

It being an undisputed fact that the purchase of the drug was made by George White, and it being alleged by appellees that the said George White, in making the purchase, was acting for or on behalf of said appellees, the court should have charged upon the subject of contributory negligence on the part of said George White, as requested by appellant. (Beach on Cont. Neg., p. 106, sec. 33; Putterbaugh v. Reasor, 9 Ohio State, 484.)

The court erred in that portion of its charge where it charged the jury as follows: "And the value of the child's services during the period of her minority is to be ascertained by you as best you can from your own judgment, common sense and sound discretion, and the evidence before you," because the same was not the law, and was calculated to mislead, and did mislead, the jury, by indicating to them that they were to be, and should be, controlled in their finding by other matters and considerations than the evidence. (Houston & Texas Central Railway Company v. Nixon, 52 Texas, 34; Green v. Hill, 4 Texas, 465; 2 Thomp. on Neg., p. 1292 (3); Quinn v. Moore, 15 New York, 432; Penn. Railroad v. Bantom, 54 Penn. State, 495.)

The court erred to defendant's prejudice in charging the jury as follows: "If you find for the plaintiffs, you will find for them such damages as you may think proportioned to the injury resulting from the death of said child, not to exceed, however, the sum expended in an effort to have her relieved from the effects of having taken said morphine, and the reasonable value of the services of said child from the time of her death till she would have attained the age of twenty-one years, not to exceed the sum sued for." (Railroad Company v. Le Gierse, 51 Texas, 189; Railroad Company v. Nixon, 52 Texas, 25; 2 Thompson on Neg., 1292 (3), and authorities cited; Likman v. Brooklyn, 29 Barb., 234, on second clause of proposition; Newman v. Dodson, 61 Texas, 92.)

*Furman & Stedman,* and *Carter & Wynne,* for appellees.

WALKER, ASSOCIATE JUSTICE. E. L. and C. E. White, the parents of Chalcy White, their daughter, about six years old

at her death, sued appellees for negligently causing her death. Appellees, in their petition, allege, in substance, that they were on the thirtieth day of August, 1883, husband wife, the parents of said infant, who was about six years old; that on said day appellants were wholesale and retail druggists, doing business in the city of Fort Worth; that on the twenty-ninth day of August, 1883, their said child being sick, appellee, E. L. White, told his brother, George White, who was on that day going to said city, that he had better get a bottle of quinine; that accordingly said George White did, when he arrived in said city, apply to the agent and servant of appellants, one H. D. Ramsey, for quinine, which was a wholesome and harmless drug; but that said Ramsey negligently and carelessly sold and delivered to said George White, a poisonous drug known as sulphate of morphia, commonly called morphine; that said George White received said drug believing it to be quinine and paid for it out of money belonging to him and E. L. White as partners; that in applying for quinine the design, on the part of said George White, was to procure the same for the common benefit of his own family and that of E. L. White, all of whom lived in one house and used together any quinine that might be on hand; that neither plaintiff nor said George White knew that said drug was anything but quinine; that said drugs of morphine and quinine closely resemble each other, and the appellees and said George White not being experts nor able to test the quality of drugs, relied wholly upon the representations of said Ramsey as to the character of the drug delivered, and that so relying they did administer the same to their said child, in such quantity that it produced and caused her death, the dose being a reasonable and proper one had the drug been quinine as represented; alleging damages as follows: Fifty dollars for medical attention, and seven thousand five hundred dollars for the loss of her services from the time of her death until she would arrive at the age of twenty-one years.

Appellants answered by general and special demurrer, setting up as the ground of special demurrer that the petition failed to show any privity of contract between plaintiffs and defendants, or between defendants and the deceased. Defendants also plead contributory negligence on the part of plaintiffs and on the part of George White, their agent. The demurrer was overruled. Trial and judgment had for plaintiffs for one thousand five hundred dollars.

The petition alleged facts showing the contract relations be-
tween plaintiff E. L. White as customer with the defendants as
druggists; the sale and delivery of the morphine instead of
quinine; that, relying upon the declaration of the druggist
clerk that the drug was quinine, and believing it to be quinine,
the plaintiffs had administered it to their daughter, from the
effects of which she died. This makes a cause of action.

The charge of the court submitted the facts in evidence, with
suitable definitions of the degrees of carefulness required of
druggists, and of the customer; that plaintiffs could not recover
if their negligence had contributed to the death of the child.
Upon the measure of damages the rule was given:

"If you find for plaintiffs you will find for them such dam-
ages as you may think proportioned to the injury resulting
from the death of the child; not to exceed, however, the sum
expended in an effort to have her relieved from the effects of
the morphine, and the reasonable value of the services of the
child from the time of her death till she would have attained
the age of twenty-one years, not to exceed the sum sued for.
Neither physical nor mental suffering of the deceased child, nor
the mental anguish of the parents in consequence of the death
of their child, are items or elements of damages to be consid-
ered by you. And the value of the child's services during the
period of her minority (if you should find for plaintiff), is to be
ascertained by you as best you can, from your own judgment,
common sense and sound discretion, and the evidence before
you." And further: * * * "If ——— (the druggist
clerk) did not sell the drug to George White at all, or if he did
sell it to him yet he sold to him the article called for, then the
plaintiffs can not recover." * * * "The burden of
proof is on the plaintiffs to show that the drug was purchased
from defendants, and that quinine was asked for, and that it
was sold and represented to be quinine."

The defendants insist that the court erred in refusing to
charge the jury that "if George White was guilty of negli-
gence in failing sufficiently to examine the label upon the
bottle in question, after he received the same, and that if he
had examined the label the fact that the bottle did not contain
quinine would have been discovered; and that such negligence
contributed to the injury." * * * The testimony
showed that at request of plaintiff E. L. White, his brother
George had bought, expecting to get quinine; that returning

from town he produced the bottle containing the drug, telling plaintiff what the druggist clerk had said about it, that he put it upon the mantel piece from which it was taken when the dose was prepared for the child.

George White testified that he asked for quinine, and that he was assured by the druggist's clerk that it was the best quality of French quinine. It also appears that after the family became alarmed at the effects of the drug, George White took the bottle to a physician to know what was its contents. The clerk testified that he had no recollection of having sold the bottle; that if he did so, he had delivered what was called for. That there was no French quinine in the shop, and that the two drugs were kept in separate places, some distance apart. That ounce bottles of both were wrapped in blue papers, and that it was not usual to examine contents of bottles or packages sold in bulk.

Upon this state of facts, even if the charge asked had not been obnoxious in declaring as matter of law that the failure of George White to notice the label, and that such examination would have disclosed the danger, constituted contributory negligence, still it was not warranted. The part performed by George White as the intermediary between plaintiffs and defendants was on the one hand to buy, and on the other to receive and bring it home. No call is made by this testimony for the action of the jury to ascertain proper care on his part further than was given; that if he got what he asked for from the druggist the plaintiffs could not recover.

The eighth assignment challenges the correctness of the charge upon the mode of ascertaining the amount of damages: "And the value of the child's services during the period of her minority is to be ascertained by you as best you can from your own judgment, common sense, sound discretion and the evidence before you." In the charge as given above, it will be seen that the correct rule had been given, viz: "The medical expenses and the reasonable value of. the services of the child from her death till she would have attained the age of twenty-one years."

The testimony to the services, etc., of the child was given by her mother. "She (the deceased) was six years old when she died. * * She was a bright, intelligent child, and with the exception of a few chills, had been in good health before this morphine was given her. She was of great assistance about the

house. She aided me in taking care of my baby, then about a year old; she helped to wash the dishes, and swept the house, and rendered other important services about the house. We were poor people and all of us worked." The parents were en_gaged in the dairy business about four miles from Fort Worth.

In Railroad Company v. Nixon, 52 Texas, 24, the question was raised, but not decided, in this character of case whether "the jury can determine for themselves in their own uncontroled discretion the amount of pecuniary compensation which the parents should recover."

In 57 Texas, 304, Railway Company v. Cowser, in discussing the discretion which may be exercised by the jury in fixing the amount of compensation, the court suggests, "If it should be allowed in any case, it would be upon the principle of necessity only, and should be restricted to that class of cases in which, from the necessity of the case, satisfactory evidence was not attainable."

Again, in 57 Texas, 508, Railroad Company v. Kindred, in case of the mother suing for damages from death of an adult son, it was held that "the evidence in this class of cases, from the nature of things, can not furnish the measure of damages with that certainty and accuracy with which it may be done in other cases; hence the necessity and wisdom of leaving the question of damages to the discretion of the jury, which will be revised by the court, but their finding will not be set aside unless it be made to appear that such discretion has been abused."

These cases show the condition in which our courts leave the question raised in this assignment. In this case the cause of action is the damages for loss of services during the minority of the child. This limit, in time and the further fact that the parents have the legal right to the child's services during minority, prevent the direct application of the rule in the Kindred case as a matter of principle.

In 21 Wisconsin, 374, Potter v. Chicago & Northwestern Railway Company, the court discusses the measure of damages and the means in practice of ascertaining them under the statute like the Texas statute, a substantial re-enactment of Lord Champbell's act, 9 and 10 Victoria, chapter 93. "The verdict must be based upon evidence. The statute is peculiar and much must be left to the sound judgment and discretion of the jury. But we do not think it was intended that they should find a verdict for damages without evidence of pecuniary loss.

What is the testimony as to such loss in this case? It is that the deceased was aged eleven years and three months; that she was a bright, intelligent girl, strong and healthy, had been to school and to Sunday school; was a good child to work, and accustomed to help her mother. This is all, and it is sufficient to base a verdict for any reasonable sum for the loss of the services of the deceased during her minority."

In 18 Illinois, 359, City of Chicago v. Mayor, in a suit for death of child four years old, the trial judge charged the jury that they "must make their estimate of pecuniary damage from the facts proved, and that it was not necessary that any witness should have expressed an opinion as to the amount of such pecuniary loss." On appeal, the court held: "In this as in other cases, it was proper for the jury to exercise their own judgment upon the facts in proof by connecting them with their own knowledge and experience which they are supposed to possess in common with the generality of mankind."

"It is only where witnesses are supposed to possess a skill and judgment superior to the generality of mankind upon a particular subject that their opinions are allowed to go to the jury for the purpose of supplying the supposed want of experience and judgment of the jury. Where such aids are not attainable or are not produced, then the jury must be guided by their own best judgment applied to the facts in proof for the purpose of arriving at a conclusion."

In City of Chicago v. Hesig, 83 Ill., 207, suit for death of a child four years old, arguing, it is declared where it was claimed that a verdict of eight hundred dollars was excessive: "As a matter of law we can not so declare, and, as a matter of fact, how can we know that the amount is in excess of the pecuniary damages sustained? When proof is made of the age and relationship of the deceased to the next of kin, the jury may estimate the pecuniary damages from the facts proven, in connection with their own knowledge and experience in relation to matters of common observation. It is not indispensable there should be proof of actual services of pecuniary value rendered to the next of kin; nor that any witness should express an opinion as to the value of services that may have been, or might be rendered," citing 43 Ill., 338.

In Chicago & Alton Railroad Company v. Beeker, 84 Ill., 486, in suit for death of a boy between six and seven years old, and upon verdict of two thousand dollars damages, the court de-

clares the amount is not so large as to justify the inference that the jury was actuated by passion or prejudice. It is true that in an action of this character the recovery must be confined to the pecuniary loss, but the amount of damages was a question of fact for the jury, refusing to set it aside.

From this citation of authorities, which in the main we approve, in connection with the statute, "The jury may give such damages as they may think proportioned to the injury resulting from such death" (art. 2909), we may suggest: First, where the killing of the child was wrongful, etc., the parents are entitled to at least nominal damages. Second, where the testimony shows the bodily health and strength, the sprightliness, or want of it, of mind; the aptitude and willingness to be useful in performing services, the mode such faculties are exercised, as in useful labor or otherwise; and when, from the age and undeveloped state of the child any estimate of value of the services until majority would be matter of opinion in which no particular or especial knowledge in way of expert testimony could be procured better than the judgment and common sense of the ordinary juror called to the duty of determining such value, then, upon such testimony, the sound discretion of the jury can be relied on to determine the value without any witness naming a sum. Third, as the age of the child increases and his faculties develop, testimony to actual services can and should be produced, giving a wider basis of induction to the jury in calculating the damage from the loss. Fourth, the circumstances of the parents suing, as in this case, often become necessary as evidence. Not as a basis for increasing or diminishing the amount, but to illustrate the acts of the child as useful or otherwise. In this case the parents kept a dairy; all the family worked. The child, by attending to some duties, relieved the mother so that she could engage in other necessery labor.

We consider the clause in the charge objected to to be cautionary and as likely to have benefited the defendants as the plaintiffs. It was rather an admonition against extravagance than a suggestion to it. The words are not misleading, nor do they encroach upon the rule as to damage previously given. "We can not and will not presume that the jury were other than intelligent men. They are not an accidental part of the tribunal of justice. Juries are an institution of the fundamental law of the land, and we as a court of errors can predicate noth-

ing upon their errors or call that an error of instruction which to us is intelligent and right." (Railroad v. Ogier, 85 Penn. State, 73.)

The twelfth assignment relates to the refusal of the court to give an instruction asked which had already been given by the court limiting the recovery to the pecuniary loss of the plaintiffs. This refusal to repeat the charge was not error.

In the fourteenth assignment is urged as error the measure of damages, viz: "Such as you may think proportioned to the injury resulting from the death of the child not to exceed, however, the sum expended in the efforts to restore her and the reasonable value of the services of the child from the time of her death till she would have attained the age of twenty-one years, not to exceed the amount sued for." This, it is insisted, was calculated to mislead or prejudice the jury by indicating that the amount claimed could control in some way their finding. It is insisted also that the court should have limited the value to probable net proceeds, excluding expenses of nurture, education, etc. We do not think that a jury of ordinary discretion would need such a caution from the judge. The reference to the amount claimed has been regarded improper, but not such error as to require reversal when the verdict as in this case is largely below that claimed. (Newman v. Dodson, 61 Texas, 92.)

The recovery by husband and wife jointly is not a violation of the rule requiring the jury to apportion the amount found. The plaintiffs are equally entitled to the recovery.

The sixteenth assignment is upon the refusal to grant a new trial upon the facts. The sufficiency of the testimony under proper instructions was for the jury. How much of non expert medical practice may be indulged in is not for the courts to determine. Only in case of alleged injury are such matters brought before the courts. It may be that many men are their own physicians, prescribing for themselves and families. But this will not excuse the expert druggist from responsibility for want of care or of skill required in his business, when dealing with men who from necessity must rely upon the druggist for the article they may wish to use.

There is no error in the record and the judgment is affirmed.

*Affirmed.*