Texas & Pacific Railway Company v. T. H. Harby and Wife.

Decided February 8, 1902.

**1.—Railroads—Negligence—Running Over Child on Track.**

Where an engineer was negligent in failing to see a child on the track, and so ran over it, the fact that he used all diligence to stop the train after discovering the peril would not relieve the company of liability, since the essence of the fault was in not discovering the peril earlier.

**2.—Same—Fact Case—Failure to Discover Peril.**

Evidence considered and held sufficient to show negligence on the part of an engineer in failing to see a child on the track at a point where people were accustomed to use the track.

**3.—Same—Railroad Bridge as Footway.**

It was immaterial that the railroad bridge on which the child was run over was not a public footbridge where it was commonly used by people for crossing the river there, and the engineer ought therefore to have anticipated that people might be on the bridge at that time.

**4.—Measure of Damages—Killing Child.**

Where, in an action by parents for the negligent killing of a minor child, the court charged that the measure of damages would be "the present value of the pecuniary assistance, if any, plaintiffs would have received from the child if it had not been killed," it was not error as matter of law to refuse a charge limiting the right of recovery to the minority of the child.

Appeal from Parker. Tried below before Hon. J. W. Patterson.

B. G. Bidwell, for appellant.

Ben Randalls and H. L. Moseley, for appellees.

CONNER, CHIEF JUSTICE.—This suit was brought by T. H. Harby and his wife against the Texas & Pacific Railway Company for damages resulting from the death of their daughter, about 4 years of age, who was killed by a passing train of the company on the east end of the railway bridge over the Colorado River, at Colorado, Texas.

It was alleged that said bridge by common use and custom and by permission and acquiescence of the appellant company was a public crossing over the river named; that the train which ran over and killed their daughter approached the bridge from the west; that their said child had gone on said bridge and could have been seen by those in charge of the approaching train for some 2000 feet west of the bridge, and that had the engineer in charge of said train used ordinary care and prudence he could and would have seen said child in time to have stopped the train before running over it. It was also alleged that the said engineer did see said child and its peril in time to have avoided the injury, but that he negligently failed to do so, and approached said bridge and the child thereon at a great rate of speed and ran over it and caused its death.

Appellant denied negligence on the part of its agents and employes, and alleged that after they discovered the child they did everything within their power to stop the train and save its life.

The court submitted both grounds of recovery alleged, and the assignments of error attack the general verdict of the jury in appellee's favor on the ground that the evidence shows that the bridge mentioned was not a public one, and that hence the child was a trespasser thereon, and no duty of lookout rested upon the operatives of the train. Also that it appears that after the peril was discovered the engineer did all within his power to avoid the injury.

We have concluded that we must overrule these assignments. The evidence tends to show that the train in question, consisting of sixteen cars heavily laden with cattle, was behind time, and that it approached the bridge in question at a high rate of speed on a very heavy down grade; that the station at Colorado City was some 900 feet east of the bridge; that from a distance of some 1200 to 1800 feet west of the bridge objects thereon were readily discernible; that had the engineer been on the lookout therefor the situation of the child would have been discovered in time to have avoided injury to it; but that, according to his testimony, by reason of the outlook kept by the engineer for the "passing" or "stop" signal at the station, the child's presence on the bridge was not discovered until the engine was within about a train length, or 680 feet, of it; theretofore, however, at a point not fixed by the testimony, the engineer saw an object on or beside the track that at the time he was unable to identify, but as soon as he saw that it was a child he applied the emergency brakes, sanded the rails, and used all the means at his command consistent with safety to stop the train, but that the train was "going so fast," to use the engineer's words, that the child was run over and killed as alleged. The engineer also testified that after the engine passed

over the child he released the air brakes so as to get over it as quickly as possible and ran on into the station; that had he not so released the brakes his train would have come to a stand when about halfway over where the child was run over, and some parts of his testimony, perhaps, also indicate that the engine passed over the little girl without injury. The fireman's evidence, however, tends to show that the engineer's effort to stop the train began just about the time the engine was going upon the west end of the bridge, which was about 380 feet from the place of injury, and the testimony of Mrs. Maggy Harby, the mother, tended to show that no whistle was blown as the train approached the bridge, and that the train "came in without checking at all." The testimony of Mrs. Annie Harby, Maggie Graves, G. W. Waddel, and others was to the effect that the bridge in question had for a number of years been daily used as a footway or passage for people having occasion to cross the Colorado River between Colorado City on the east and the salt works on the west.

We think the evidence sufficient to sustain the verdict on the ground that there was negligence, from which the injury proximately resulted, in failing to discover the perilous situation of the little girl killed in time to have avoided all injury to her. It is hence immaterial that after the child's danger was discovered the engineer used all the means in his power to prevent the injury. The essence of the fault was in not earlier discovering the peril. In Shearman & Redfield on Negligence, section 99, it is said: "It is not necessary that the defendant should actually know of the danger to which the plaintiff is exposed. It is enough that he has sufficient notice or belief to put a prudent man on the alert, and he does not take such precautions as a prudent man would take under similar notice or belief." It is therefore likewise immaterial that the bridge was not a public crossing in the general sense of that term, as indicated by testimony in behalf of appellant. The failure to use ordinary care to avoid injury to another whereby injury results constitutes actionable negligence. In determining what constitutes ordinary care when the question is involved, reference must always be had to the circumstances of the particular case; so that whether the bridge was in fact a public crossing or otherwise, its long continued use as above indicated tends to show that such use was known to the company and to its employes. Indeed, we find in the evidence no denial on the part of the engineer that he was without knowledge of the use of the bridge as a crossing for foot passengers, and we think, therefore, it was a question for the jury to determine from the evidence whether the operatives in charge of the train were negligent in failing to have it under proper control, and whether the engineer ought, under the circumstances, to have reasonably expected that some person might be on the bridge, and that ordinary care on his part would have prompted him to have kept a lookout for such persons, and whether his failure to do so and to earlier discover the situation of the child and avoid injury thereto constituted negligence.

In the case of Railway v. Bellew, 54 Southwestern Reporter, 1079, under somewhat similar circumstances, we approved a charge of the trial court which, in effect, placed upon the appellant in that case the burden of ordinary care to ascertain Bellew's position and situation on a road not formally made public extending along its right of way. The views we therein expressed were adopted by the Court of Civil Appeals for the First District on another appeal, affirming a judgment against the railway company, and a writ of error was refused by the Supreme Court. See 62 S. W. Rep., 99; Railway v. Watkins, 88 Texas, 20.

To what is here said we add that we are of opinion that the first assignment of error, which is the only one suggesting in any way the insufficiency of the evidence to sustain the verdict on the issue above treated, presents an immaterial issue and in reality does not require us to pass upon the sufficiency of the evidence on that issue, and upon this ground rather than the other Justice Stephens concurs in the disposition made of the appeal.

This view renders it unnecessary to determine the effect of the evidence tending, perhaps, to show that the engine passed over the child without harm, and that the fatal injury was inflicted after the train could have been stopped had the engineer not released the emergency brakes as hereinbefore stated. Justice Hunter, however, while concurring in the main conclusion, desires to here add the following, which is inserted in his own language:

"I am of opinion that the evidence of the engineer, who was a witness of appellant, as found in his redirect examination on page 37 of the transcript, is to the effect that the cow-catcher or pilot of the engine passed over the child without injury to it, and, as the same witness testified that he could have. stopped the train over the child, that the judgment might also be sustained upon the ground that it was negligence in the engineer to fail to stop the train as soon as he could possible do so without endangering himself or the engine and train. Because, as the pilot passed over the child without injuring it, and as no witness testified as to what did injure it, it is possible and probable the injury was caused by some bolt or rod or beam which would not have struck the child had the engineer stopped as quickly as he could, and hence I conclude that the engineer's evidence shows affirmatively that he did not do all that he could and should have done to avoid the injury after he discovered the peril of the child."

Another contention is that the court erred "in giving the jury the measure of damages," and in refusing to give the special instruction embodying the true rule. The jury were instructed that in the event they found for plaintiff, that the measure of their damages would be "the present value of the pecuniary assistance (if any) that the plaintiffs would have received from the said child if it had not been killed," the contention being that in assessing damages the appellees' right of recovery should have been limited "to the minority of the child."

As presented the question is one of law merely, there being no conten-

tion in the proposition submitted under the assignments raising this question that there was no evidence authorizing the submission of the trial court's view of the law. There was evidence to the effect that the little girl, who was 4 years old, was a healthy, bright little girl, with a good mind, and "smart as she could be;" that Mr. and Mrs. Harby were very poor people with five children, one of them younger than the one that was killed; that Mrs. Harby took the best care of her children that she could, but was required to work all the time; that at the time of the accident in question Mr. Harby was a day laborer at the salt works on the west side of the river, about a mile southwest of the town.

The recovery in the present case was for $900, of which no complaint is made as being excessive. The question of what may be the value of the services or contributions that may be reasonably expected of a child on the part of the parents is necessarily one attended with difficulties, and great uncertainty. The question, however, is one addressed to the sound judgment of the jury, and we are unable to concur in the contention that the recovery, as matter of law, must be limited to the time of minority. In the case of Railway v. Nixon, 52 Texas, 25, the question here submitted was insisted upon in behalf of the railway company in that case. In disposing of it the court said: "The common law principle upon which a parent can recover damages for an injury to his child is based upon the relation of master and servant, and as this ceases when the child arrives at the age of majority, damages, under the common law, should be limited to this period. It is, however, a grave question, under our statute (Paschal's Digest, article 15; Revised Statutes, articles 2899-2909) whether, with proper allegations, this damage, which is allowed as 'proportioned to the injury resulting from such death,' should be thus limited. We find expressions in some of the authorities that the damages should be restricted to the minority of the child, but no well considered case where this point is directly made and thus decided. In Potter v. Railway, 21 Wisconsin, 377, it is held that the pecuniary advantage of the life of the deceased, after the time when he should reach his majority, can be considered only after proof of the indigent or dependant circumstances of the parent."

In the case of Railway v. Sciacca, 80 Texas, 355, a verdict for $2000 for causing the death of a child 18 months old was approved, and while the precise point now before us does not seem to have been involved in the disposition of that case, the court took occasion to say that: "Damages would not be limited to the services of the child during minority, but would extend to such benefits as it might confer on its parents after majority. It was alleged and proved that the parents were poor, and on the testimony as to the age, sex, and healthy, robust condition of the child, it was a question largely in the discretion of the jury as to what damages should be allowed either up to the time the child would reach its majority or afterwards."

In the case of Railway v. Mechler, 29 Southwestern Reporter, 202, the Court of Civil Appeals for the Fourth District, in an opinion by Chief

Justice James, in passing upon an exception taken to the petition of the appellee in that case, say: "The petition was also excepted to in respect to the damages claimed after the child should have reached majority. The petition alleged in this respect $200 per annum during the minority of the child, and $300 per annum after majority, during the expectancy of his life, stated to be 21 years after majority. The point made was that damages claimed for the time after majority were too remote and speculative. Had the suit been for an injury not resulting in death, the parent would not have been entitled to recover except in respect to the time of the child's minority. This rule has no application here. The damages in a case of this character consist of the pecuniary value of the child's life to the parents, and there is no rule which confines these damages to a portion of the child's probable lifetime. The duration of the child's life, as well as the pecuniary benefits likely to have been derived from the child during its life had it lived, was of necessity a question addressed to the sound judgment of the jury." This ruling appears to have been approved by the Supreme Court on writ of error. See same case, 30 S. W. Rep., 899; Railway v. Hyatt, 12 Texas Civ. App., 455.

The error complained of in the third assignment, we think, was invited by a special instruction given at the request of appellant, and our conclusion is that the evidence sustains the essential allegations of the appellees' petition, and that the judgment should be affirmed.

*Affirmed.*

Writ of error refused.