## RIO GRANDE, EL PASO & SANTA FE R. CO. et al. v. DUPREE.

### No. 2721.

Court of Civil Appeals of Texas. El Paso.

Jan. 19, 1933.

Rehearing Denied Feb. 9, 1933.

Turney, Burges, Culwell & Pollard, of El Paso, for appellants.

Robert L. Holliday and Henry T. Moore, both of El Paso, for appellee.

WALTHALL, J.

This is a companion case to that of Rio Grande, El Paso & Santa Fe Railroad Company v. Dupree, by this court, and reported in 35 S.W.(2d) 809, and reviewed on writ of error by the Commission of Appeals, Section A, and affirmed by the Supreme Court as recommended by the Commission [55 S.W. (2d) 523]. We refer to the above case for a full statement of the facts and the law as applied to the instant case.

The record shows that on March 24, 1928, Dr. W. A. Dupree and his son, John L. Dupree, were each killed at a public road crossing, at the same time and under the same circumstances, in a collision between a Ford truck in which they were riding and a locomotive attached to a freight train, operated by the Atchison, Topeka & Santa Fe Railway Company on the track of the El Paso & Santa Fe Railroad Company in El Paso county. In the former suit Mrs. Dora Dupree, surviving wife of her deceased husband, sued in her own behalf as next friend for her two minor sons to recover damages against the two companies for the alleged negligent killing of her said husband.

In this suit appellee seeks to recover for herself against appellants for the death of her son, John L. Dupree, then seventeen years of age, the present value of such pecuniary loss suffered by her by reason of the death of her son, John Dupree, averring in effect, the same facts and circumstances as in the suit for the death of her husband, and averring as negligence substantially the same acts as in said former suit. Appellants, in defense, alleged substantially the same facts as in said former suit. Such acts are reflected in the several special issues submitted to the jury on the trial.

The jury found all of the issues submitted in favor of appellee.

On the verdict of the jury the court entered judgment in favor of appellee and appellants assign error and prosecute this appeal.

Opinion.

This case was tried and judgment rendered and the case briefed by both parties pending the former Dupree Case on writ of error. In their brief appellants say: "We have no new thoughts on the question, nor have any cases bearing on the question, decided since that submission, been called to our attention. We must, therefore, rest upon the record made there, re-submitting, if it may be done here, and respectfully asking that the court give further consideration to these questions, based upon the actual record made on the trial. * * * We again, therefore, submit the question of contributory negligence arising under the facts here presented."

We may add here that we have before us in considering this appeal the opinion of this court written by Judge Higgins, and the opinion of Judge Critz, for Section A of the Commission of Appeals, the latter handed down and approved by the Supreme Court on December 22, 1932. We can add nothing to what has there been said, we therefore pretermit any discussion of what has been so ably discussed in the briefs on the same questions in the other Dupree Case, and refer to the opinions for what is there decided.

On the trial of this case the court submitted to the jury questions numbers 18 and 19, as follows:

No. 18, with the court's explanation, reads:

"Do you find from a preponderance of the evidence that the plaintiff, Dora S. Dupree, has suffered pecuniary loss by reason of the death of her son John L. Dupree?

"If you do find from a preponderance of the evidence that during the course of their lives the deceased, John L. Dupree, would have contributed in money, services or other things of value to the plaintiff, Dora S. Dupree, the present value of which is in excess of the present value of the expense or cost that the plaintiff would have been put to for his maintenance and education or other expenses, then you will answer the above question yes; and if you find that the expense of the maintenance and education of the deceased, or other expense, to which the plaintiff would have been put had he lived, would have equalled or exceeded the present value of the contributions that the deceased would have made to her had he lived, you will answer the above question no."

Question No. 19, with the court's explanation, was as follows:

"How much do you find to be the pecuniary loss suffered by the plaintiff by reason of the death of her son, John L. Dupree?

"In answering this question, you should take into consideration only the present value of the pecuniary or material loss suffered, if any, by reason of the death of her son in excess of the present value of the expense or cost she would have been put to on his account had he lived, and not take into consideration any damages suffered by reason of loss of society, and you should not allow anything for comfort or for the grief suffered by the plaintiff by reason of the death of her son."

The record shows, without dispute, that the deceased son, John L. Dupree, was seventeen years of age at the time of the accident and was going to school; that he lived with his father and mother.

The objections made by appellants, as

shown by the record, to questions numbers 18 and 19, were:

(To No. 18) "Because same is not the proper measure of recovery and does not give to the jury a correct rule to guide it in determining what would be regarded as pecuniary loss under a case of this character. No such rule of recovery as there stated has ever been recognized under the laws of this state."

"To question No. 19, and particularly the explanation therein made by the court, because it states a false premise. The record herein is sought for the death of a minor son, and to whose services the parent would not be entitled after majority, and the right after majority would depend upon evidence warranting the conclusion that deceased would have made contributions. The rule as stated by the court to guide the jury as to the amount of the recovery, if any, does not have a proper basis, and has never been recognized in this state. The rule announced by the court does not correctly state that which has been recognized for fifty years in this state as being the measure of recovery in a case of this character."

Appellants in their brief are more specific in stating their objections. We make a few observations taken from the brief: No distinction is made based upon the minority and majority of the deceased boy. It was an erroneous statement as to the right of a parent to recover for the death of a minor. "There is no such thing in law as contributions from a minor child to a parent. The services of a child belong to the parent"— "these belong to the mother as a matter of right"—"it was his services during minority that she lost, if anything, not contributions of money or other thing of value." "The fact is, he had performed no services, and the evidence does not indicate that he had made any contributions."

A few quotations from the record may not be amiss. The deceased's mother, Mrs. Dora S. Dupree, testified: Witness teaches school in El Paso High. She taught deceased for years herself. He was studious and just an ordinary kid, a bright enough boy, and with a leaning toward science, chemistry, physics, and history. He was kind and ambitious for his mother. "He always hoped to get me a pink dress, because I didn't dress to suit him." When he studied geography and history, "he never studied about a place he didn't plan to take me there when he made enough money." On one occasion he said: "Why, Mama, I don't have to go to college, as soon as I graduate, if Papa were to be killed (the family was then living in Mexico) I would make your living for you." On one occasion when working and receiving wages from his father he said: "I will take half but I want half to go into Mom's adobe house." "He stood high in his classes, had an average of 88 in the College of Mines.

* * * After he graduated from High School he substituted at $5 per day in Math, and history and science and English." He was six feet tall and weighed around 165 pounds. It was not necessary for him to contribute money to actual expense of the family, his father was able to attend to that.

By a witness other than the mother of deceased the record shows that deceased was industrious and had worked with witness mixing and wheeling concrete for the family home.

Subdivision 2, of article 4671, Statutes 1925, provides that when an injury causing the death of any person is caused by the wrongful act or neglect of any railroad and others mentioned, or their servants, such railroad "shall be liable in damages for the injuries causing such death."

As to the damages resulting in death, article 4677, of our statute seems applicable, which states: "The jury may give such damages as they think proportionate to the injury resulting from such death."

The objection does not go to the sufficiency of the petition to justify the submission of a recovery for the present value of the pecuniary loss suffered which the mother could reasonably expect during both the deceased's minority and majority; nor does the objection go to the sufficiency of the evidence to justify a recovery for services rendered during minority and majority of the deceased. The petition declares upon what the deceased was able to earn and would have earned in her support during his minority and his majority. The question is then presented, Could the mother recover, as a matter of law, for the present pecuniary value of the services rendered her during the minority and the majority of the deceased, where the evidence justifies such recovery? It will be noted that the statute makes no difference or distinction as to the character or the value of services rendered during the minority and majority of the deceased, the only requirement is that the one causing the injury shall be liable in damages for the injuries causing said death. The pecuniary value of the loss of services that the mother could reasonably expect to recover must be determined by the evidence as to the ability, willingness, etc., of the deceased to render such services before and after his majority.

Without quoting from the cases at length the points suggested by appellants, both as to form of the charge and the evidence, have been directly passed upon by the Supreme Court and Courts of Civil Appeals in the following cases:

In Gulf, C. & S. F. Ry. Co. v. Compton, 75 Tex. 667, 13 S. W. 667, 670, the court held that the plaintiff being the sole surviving parent of the deceased, is entitled to recover, if at all, damages "not only for the loss

of services during her son's non-age, but also for the loss of any prospective pecuniary benefits which she may have received from him after he attained his majority. She has sued for the whole in the statutory action, as we think she had the right to do, and her right to recover in such action cannot be restricted to the period of her son's minority."

To the same effect are the cases of San Antonio St. Ry. Co. v. Mechler (Tex. Civ. App.) 29 S. W. 202, and affirmed 87 Tex. 628, 30 S. W. 899; Texas & Pacif. Ry. Co. v. Harby, 28 Tex. Civ. App. 24, 67 S. W. 541, and cases referred to. A writ of error was refused. The case of English v. Miller (Tex. Civ. App.) 43 S.W.(2d) 642, was a suit by the widow to recover damages for alleged negligence in causing the death of her minor son. The charge is similar to that submitted in the instant case, allowing recovery for any pecuniary value in dollars and cents to the mother for the services of her deceased son during his minority, less the cost and expense for his maintenance, etc., during his minority, and the value in money of any pecuniary benefit the mother had a reasonable expectation of receiving from the deceased son after his majority, excluding from recovery mental suffering, etc., incident to his death. The Amarillo court held that the law is settled that the plaintiff was entitled to recover as submitted in the charge. We state only the substance of the charge and refer to the case for the verbiage of the charge. A writ was refused.

■ Appellants refer to the case of Chicago, R. I. & G. R. Co. v. Loftis (Tex. Civ. App.) 168 S. W. 403, 404, and submit that no evidence was offered as to the cost of care and education of the minor, and for that reason there is no evidence from which the jury could determine the value to the mother of his services, and the jury could not properly find such expense from their own experience.

The case supports appellant's contention. The opinion, in support of the holding, refers to Sabine Land & Improvement Co. v. Perry (Tex. Civ. App.) 54 S. W. 327. We do not think the referred to case is in point in this character of case. We have concluded that the Loftis Case is not in harmony with other Texas cases we have examined. In Brunswig et al. v. White et ux., 70 Tex. 504, 8 S. W. 85, the Supreme Court, after reviewing a number of cases in other jurisdictions, states with approval and holds, as we understand it, to a rule different from the Loftis Case. In Rishworth v. Moss, 191 S. W. 843, 851, on motion for rehearing, the San Antonio court said: "They say that the evidence would not support a verdict of pecuniary loss, because no evidence was adduced of the cost of the support and maintenance of the child, and therefore the jury had no basis for estimating the difference between the value of her services and the cost of support and maintenance. This contention is without merit. We have found no decision by our Supreme Court which requires any more exact character of proof with reference to cost of support and maintenance than the pecuniary value of the services. * * * Our Supreme Court has expressed the opinion that the jury can make the estimate just as well as the expert, and that these matters are not susceptible of accurate proof, and therefore must be left to the jury. Brunswig v. White, 70 Tex. 504, 8 S. W. 85; Railway v. Measles, 81 Tex. 474, 17 S. W. 124."

The case of Fort Worth & D. C. Railway Co. v. Measles, supra, holds that: "It would seem to be only necessary to prove the willingness and the capacity of the child, his age, and his relationship to the next of kin, and the extent to which he has been injured; leaving to the jury, as 'men of knowledge and experience in relation to matters of common observation,' the task of assessing the pecuniary damages upon the facts proved."

Appellants submit that the verdict and judgment of $10,500 is excessive. The record shows that at the time of John Dupree's death Mrs. Dupree was 49 years of age, and had a life expectancy of 21–63 years; she had two other boys, ages 9 and 15 years.

■ The statute, article 4677, provides that the jury may give such damages as "they think proportionate to the injury resulting from such death." Absolute accuracy with respect to the damages in such a case cannot be attained, and must be left to the discretion and common sense of the jury. We have reviewed and compared the amount recovered in other cases, and cannot say that the amount is excessive. Gulf, C. & S. F. R. R. Co. v. Ballew (Tex. Civ. App.) 39 S.W.(2d) 180; Flippen-Prather Realty Co. v. Mather (Tex. Civ. App.) 207 S. W. 121; Dulaney v. Sebastian's Administrator, 239 Ky. 577, 39 S.W.(2d) 1000; Ashland Sanitary Milk Co. v. Messrsmith's Administrator, 236 Ky. 91, 32 S.W.(2d) 727; Phillips' Committee v. Ward's Administrator, 241 Ky. 25, 43 S.W. (2d) 331; Oil Belt Power Co. v. Touchstone (Tex. Civ. App.) 266 S. W. 432; Hines v. Richardson (Tex. Civ. App.) 232 S. W. 889.

The case is affirmed.