**CONTINENTAL CASUALTY COMPANY,**
Appellant,

v.

**James M. THOMAS et al., Appellees.**

**No. 7202.**

Court of Civil Appeals of Texas,

Beaumont.

Feb. 4, 1971.

Rehearing Denied Feb. 25, 1971.

See also Tex.Civ.App., 458 S.W.2d 863.

Jewett E. Huff, Amarillo, for appellant.

Robert L. Templeton, Amarillo, for appellees.

STEPHENSON, Justice.

This is an action to recover damages under the uninsured motorist provision of an automobile insurance policy. Trial was by jury and judgment was rendered for plaintiffs upon the verdict. The parties will be referred to here as they were in the trial court.

Plaintiffs, James H. Thomas and wife, Juanita H. Thomas, brought this action against their insurance carrier, Continental Casualty Company. Juanita Thomas was driving a Toyota automobile, which was covered by the policy sued upon, at the time of the incident made the basis of this suit. The Toyota was first struck from the rear by an Oldsmobile automobile owned and driven by Harold D. Montgomery. The Toyota was knocked into the path of a pickup truck owned and driven by Lewis D. Martin. Plaintiffs alleged the collision was proximately caused by the negligence on the part of Montgomery. Damages were sought and recovered for injuries to Juanita Thomas and the death of their son, Michael Thomas. Montgomery was alleged to be the uninsured motorist. Neither Montgomery nor Martin were made parties to this suit.

The jury made the following findings: Montgomery was uninsured. Montgomery was guilty of negligence in failing to keep a proper lookout, in driving at a greater speed than a person using ordinary care would have driven, in failing to maintain an assured clear distance, and in failing to apply his brakes, all of which were the proximate cause of both collisions. The jury failed to find Juanita Thomas guilty of any act of negligence. The jury also found Juanita Thomas was confronted with an emergency after the collision with Montgomery, and after the emergency she acted as an ordinary prudent person would have acted under the same or similar circumstances. The jury failed to find Martin failed to keep a proper lookout. The jury further found that Martin failed to turn his vehicle prior to the collision, but that was not the sole proximate cause of the collision with the Thomas car. The jury failed to find that Montgomery was acting in an emergency.

In its first point of error, defendant contends the trial court erred in submitting the issue as to whether Martin failed to keep a proper lookout and making the next issue, as to whether such failure was the sole proximate cause, conditioned upon an affirmative answer to the lookout issue. It is conceded by counsel for plaintiffs that an act on the part of a third person may be the sole proximate cause of a collision without being negligence. In fact, the issue following this one complained about, submitted to the jury the question as to whether Martin failed to turn his automobile and whether that was the sole proximate cause of the collision. Defendant alleged in its answer that the negligence of Martin in failing to maintain a proper lookout, in failing to maintain his vehicle under proper control, in failing to turn, and in failing to take evasive action was the sole proximate cause of the collision.

The record before us shows the defendant requested these two issues, now complained of, in the exact form in which they were submitted to the jury. It is an established rule of law in this state that a litigant cannot request an issue and then later complain because the trial court submitted that issue. As stated by the Commission of Appeals in Northeast Texas Motor Lines v. Hodges, 138 Tex. 280, 158 S.W.2d 487, 488 (1942):

"It is an elementary principle supported by many authorities that a litigant cannot

ask something of a court and then complain that the court committed error in giving it to him. The rule, grounded in even justice and dictated by common sense, is that he is estopped. [Citing cases.]"

In the case before us, defendant requested the issues, and then objected to the court giving them. We have been cited no case in which this particular situation has arisen. We are inclined to believe the rule should be the same, and the error, if any, would still be waived by estoppel.

However, in this case, there are additional reasons this point of error is overruled. Defendant objected to these issues on the ground that too great a burden was placed on defendant because the jury was having to find an act of a third person to be negligence before the jury could find that act to be the sole cause of the collision. It is agreed that this principle of law is correctly stated and it would be improper to require a finding that an act or omission of a third person was negligence before submitting a "sole cause" issue. Fort Worth & Denver City Ry. Co. v. Bozeman, 135 S.W.2d 275 (Tex.Civ. App.—Amarillo, 1939, error dism., judgment correct). The trial court and all parties demonstrated they were familiar with this rule. The special issues immediately following the two complained of submitted to the jury inquiries as to whether Martin failed to turn, and whether that was the sole proximate cause. It is noted that in this connection there was no mention of negligence. We have concluded that none of the parties or the trial court could think of a way to submit an issue as to proper lookout so that it would comply with the particular rule as to "sole cause" issues, without a definition of "proper lookout" built into the issue. In addition to all of this, we find no evidence in the record which would have supported a finding of sole proximate cause as to lookout by Martin.

Defendant next has a series of points of error which are admittedly the heart of this appeal, as they raise a question of first impression in this state as to the uninsured motorist provision. Defendant contends the trial court made multiple errors throughout the trial because of a complete misconception as to the nature and type of this lawsuit. Defendant's argument, in substance, is that this is an action on a contract (the insurance policy) and not a tort action. That the policy provision is that defendant will pay all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury. That in Texas the burden of proof is upon the plaintiffs to prove not only the essential facts to show that their claim comes within the coverage provision of the policy, but also to disprove the exclusions and the limitations contained in the policy and pleaded as a defense by the insurer. [Citing among other cases, Sherman v. Provident American Insurance Company, 421 S.W.2d 652 (Tex. Sup., 1967)]. That defendant had pleadings under oath alleging this accident was proximately caused by the negligence of one of the insureds, Juanita Thomas. Therefore, under this situation, defendant contends plaintiffs had the burden of proof of establishing negligence and proximate cause on the part of the uninsured motorist, the absence of negligence and proximate cause on the part of the insured driver, and damages.

As ingenious as this argument may be, we decline to follow defendant's reasoning. We construe that portion of the insurance contract under question here (defendant will " * * * pay all sums which the insured * * * shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile * * *") to mean that defendant will pay the insured all sums the insured could recover from the uninsured motorist in a tort action. We find nothing in this policy to indicate any intention on the part of the

parties to this contract to establish different rules of law to apply to the situation before us. We construe this policy to mean the burden of proof is on plaintiffs to prove negligence and damages, and on the defendant to prove contributory negligence. We do not find the two out-of-state cases cited by defendant to support its position.

Defendant cites DeLuca v. Motor Vehicle Accident Indem. Corp., 17 N.Y.2d 76, 80, 268 N.Y.S.2d 289, 292, 215 N.E.2d 482, 484 (N.Y.App., 1966) as follows:

"* * * he must support his claim by proving those facts which he would have had to establish had he proceeded against the uninsured motorist, namely, (1) fault—i. e., the uninsured motorist's negligence as well as the claimant's freedom from contributory negligence—and (2) damages."

We construe that opinion to mean just what it says, that the insured would have to prove the same facts in an action against the insurer which he would have had to prove in an action against the uninsured motorist. In Texas, against the uninsured motorist, this plaintiff would have had the burden of proving negligence and damages, and the burden would have been on the uninsured motorist as to contributory negligence. Apparently, in New York, a plaintiff in a tort action must prove the absence of contributory negligence in order to recover.

There is a text book released in 1969, "A Guide to Uninsured Motorist Coverage", written by Alan I. Widiss, in § 2.20, at page 44, in which this statement is made:

"A comparable problem exists regarding proof of contributory negligence, since in most jurisdictions the insured is not legally entitled to recover if he was in part responsible for the accident. There are two judicial approaches regarding the burden of proof on this issue. While most states view contributory negligence as an affirmative defense to be asserted by the defendant, a minority of the states require a plaintiff to demonstrate his freedom from contributory negligence. There is no reason to expect that a court in either type of jurisdiction will change its approach to the burden of proof on the contributory negligence issue in an uninsured motorist controversy."

Defendant also cites Booth v. Fireman's Fund Insurance Company, 197 So.2d 352, 355 (La.App., 1967) as follows:

"The only requirement is that the insured establish legal liability on the part of the uninsured motorist. As pointed out in the DeLuca case, this requires the insured to prove negligence on the part of the uninsured motorist, freedom from contributory negligence on his own part, and the damages resulting from the accident."

A reading of that opinion shows the precise question as to burden of proof on the contributory negligence issue was not before the court. The Supreme Court of Louisiana wrote on the same case in 253 La. 521, 218 So.2d 580, 583 (1968), and after first stating that the basic issue for determination was the question as to limitation, wrote as follows:

"It is urged by the defendant insurer here that the language 'legally entitled to recover' requires an insured to establish every element of a cause of action in tort, and that the timely filing of his suit was within the one-year prescriptive period is such an element. We interpret the words 'legally entitled to recover' to mean simply that the plaintiff must be able to establish fault on the part of the uninsured motorist which gives rise to damages and prove the extent of those damages. DeLuca v. Motor Vehicle Accident Indem. Corp., 17 N.Y.2d 76, 268 N.Y.S.2d 289, 215 N.E.2d 482; Hill v. Seaboard Fire & Marine Ins. Co., 374 S.W.2d 606 (Mo.App.)."

It is noted that the Supreme Court of Louisiana made no mention as to requiring the insured to establish absence of fault on

his part in order to recover. We have neither been cited, nor have we found any case in which it has been held that there is any additional burden upon an insured in order to get a judgment upon the uninsured motorist provision, other than the usual burden that such insured would have had in a direct action against the uninsured motorist.

The Supreme Court of Texas, in an opinion later withdrawn, came close to passing upon the point before us in State Farm Mutual Automobile Insurance Company v. Matlock, 13 Tex.Sup.Ct.Jrl. 287, 291 (April 1, 1970). The point of error before the Supreme Court was that contributory negligence on the part of the insured had been established as a matter of law. The Supreme Court merely stated the general rule in passing upon such questions, and found the record did not show as a matter of law that the insured was guilty of contributory negligence.

In a later opinion, appearing in 462 S.W. 2d 277 (Tex.1970), a motion for rehearing was granted, the prior opinion withdrawn and the case reversed and rendered that plaintiff take nothing because he failed to prove the other operator was an uninsured motorist. No other matters were mentioned.

Although the court had an opportunity to do so, nothing was said about the matter of burden of proof as to the contributory negligence issue. These points of error are overruled.

■ Defendant has a point of error complaining of the action of the trial court during the interrogation of Montgomery, the uninsured motorist. The record in this case demonstrates the dilemma in which a plaintiff, in this type of case, may find himself when attempting to prove the person causing the collision was an uninsured motorist. This is the plaintiffs' burden as shown in State Farm Mutual Automobile Insurance Company v. Matlock, supra, 462 S.W.2d 277. Plaintiffs served defendant with a request for admission that Mont-

gomery was an uninsured motorist, which defendant denied. Before putting Montgomery on the stand, plaintiffs' counsel asked defendant's counsel to stipulate that Montgomery was an uninsured motorist, but was refused. Apparently, the only avenue left for plaintiffs was to do as they did, that is, call Montgomery as a witness and ask him if he was covered by liability insurance. No questions were asked as to the underlying facts surrounding the accident, except to show that Montgomery was the driver of the Oldsmobile automobile which collided with the Toyota. On cross-examination, defendant's counsel moved promptly into the facts of the accident, and in so doing, proceeded to lead the witness. Plaintiffs' counsel objected to a question asked by defendant's counsel on the grounds that the question assumed something the witness had not testified to, and was leading. Plaintiffs' counsel then made the statement that, inasmuch as he had not asked Montgomery any questions in that area, Montgomery was defendant's witness and defendant stood in Montgomery's shoes. Defendant's counsel asked the court to instruct the jury that defendant did not stand in Montgomery's shoes. The trial court sustained plaintiffs' objection that the question assumed something that the witness had not testified to, and then instructed the jury not to consider the comments made by plaintiffs' counsel (that Montgomery was defendant's witness and it stood in his shoes). Then, defendant's counsel started to ask Montgomery if he remembered making a prior statement about his distance behind the Toyota, and plaintiffs' counsel objected to him impeaching his own witness. Defendant's counsel objected to the statement made by plaintiffs' counsel and asked the court to instruct the jury that it was not true. The court overruled plaintiffs' objection, but declined to instruct the jury as to whose witness Montgomery was.

■ Plaintiffs' effort to limit the cross-examination to the bounds of the direct examination lacks support in Texas law. This state has long followed the so-called

English Rule which permits the cross-examination of a witness to extend to every issue in the case, regardless of the scope of the direct examination.* Wentworth v. Crawford, 11 Tex. 127, 133 (1853); Rhine v. Blake & Jenkins, 59 Tex. 240, 243 (1883); McCormick & Ray, Texas Law of Evidence (2nd Ed.), § 600, p. 467. The trial court properly ruled that defendant's counsel could cross-examine Montgomery as to all phases of this case, and that he was not limited to matters covered on direct examination. In fact, the trial court did everything defendant's counsel asked him to, in this respect, except to instruct the jury that Montogomery was plaintiffs' witness. We decline to hold this to be reversible error under Rule 434.

Our record shows that the trial court sustained every objection defendant made that plaintiffs were leading this witness. The trial court overruled every objection the plaintiffs made that defendant was leading this witness. The court granted defendant's request to instruct the jury to disregard plaintiffs' statement that defendant stood in Montgomery's shoes. The court permitted defendant's counsel to impeach Montgomery by showing prior inconsistent statements.

There is no suggestion as to collusion between plaintiffs and Montgomery. The evidence shows that plaintiffs' counsel saw Montgomery for the first time the day his deposition was taken, and that he had not talked with Montgomery before that time. Also, Montgomery had given defendant a written statement before the deposition was taken, and had a conference with defendant's counsel the day before the deposition was taken. The defendant called Montgomery's brother as a witness to give testimony as to his investigation after the collision. At the conclusion of Montgomery's testimony, defendant's counsel made the statement in the courtroom that Montgomery was not his witness.

■ In any event, we do not conclude the action of the trial court in this case was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment, as prescribed by Rule 434. As we view all of the evidence in this record, there were no close factual questions, regardless of whose witness the jury may have believed Montgomery to be. In the first place, all of the physical evidence, as testified to by the investigating officer, including skid marks and point of impact, coincided with plaintiffs' version as to how this collision occurred. The testimony of the young lady driving an automobile decorated for a football game, which was stopped at the intersection in question, coincided with Montgomery's testimony that he glanced away from the traffic ahead of him to look at a decorated automobile and when he looked back the car ahead had stopped and he could not avoid hitting it. All of this, together with the evidence given by Juanita Thomas, which was not seriously contradicted by the testimony of the uninsured motorist, left no real dispute in issue. This point is overruled.

■ This policy of insurance provided for a limit of liability in the amount of $10,000.00 as applicable to each person because of bodily injury sustained by one person as a result of any one accident, with a total limit of $20,000.00 for all damages because of bodily injury sustained by two or more persons as a result of any one accident. The jury answered $10,000.00 to a damage issue inquiring as to the amount of damages which would compensate James

---

* The so-called American Rule, followed in most of the states and in the Federal Courts, limits the cross-examination to the matters included within the scope of the direct examination. For a discussion of the two rules, see: 98 C.J.S. Witnesses § 393, pp. 164–167; 58 Am.Jur., Witnesses, § 620, p. 343; Model Code of Evidence, American Law Institute, Rule 105, Comment (h), p. 111; Rules of Evidence for the United States District Courts (Tentative Draft, March, 1969), p. 132; McCormick & Ray, Texas Law of Evidence (2nd Ed.), § 599, p. 466, 62 Tex.Jur.2d, Witnesses, § 184, pp. 87, 88.

Thomas and wife, Juanita, for her injuries. The jury also answered $10,000.00 to a damage issue inquiring as to the amount James Thomas and wife should recover for their pecuniary loss resulting from the death of their son, Michael. Defendant has a point of error for the trial court to render its judgment allowing James Thomas and wife, Juanita Thomas, individually and as surviving beneficiaries of their deceased son, Michael Thomas, the sum of $20,000.00. It is argued by defendant that under its interpretation of the policy and application of the law, it was impossible for the trial court to render judgment upon the damage issues set out above, because each person could not recover more than $10,000.00; that the trial court was not authorized to lump the damages all together, as the recovery for the death of the child was community property, but any amount Juanita recovered for pain and suffering (one of the elements listed under the first damage issue) would be her separate property; that if the jury allowed anything for her pain and suffering, then her recovery would exceed $10,000.00 for her damages which is not permitted under the contract. Defendant cites one out-of-state case which we do not find supports its position. Once again, this is a question of first impression. We interpret these provisions of the policy to mean defendant's limit of liability is $10,000.00 for each person injured or killed and the total limit of liability $20,000.00 for two or more persons injured or killed. If Juanita Thomas had been the only parent in the case, she could have recovered $10,000.00 for her bodily injury and $10,000.00 for the death of her son. The point of error is overruled.

■ Defendant objected to several special issues submitted by the court because those issues did not contain the words "if any" and therefore assumed controverted fact issues and were a comment by the court on the weight of the evidence. The weight of authority in this state is that the "if any" is not necessary if the jury has found the existence of the assumed fact in a prior issue, and the issue complained of is conditioned upon an affirmative answer to the prior issue. Nash v. Roden, 415 S.W.2d 251 (Tex.Civ.App.—Austin, 1967, error ref. n. r. e.); American Water Co. v. Bunge, 213 S.W.2d 93 (Tex.Civ.App.—Galveston, 1948, error ref. n. r. e.). This point is overruled.

■ Defendant has points of error that there was no evidence and insufficient evidence to support the jury award of $10,000.00 to plaintiffs for the loss of their son. The testimony shows this seven-year-old boy to be quiet, rather serious and rather intent. He was well-behaved, obedient and liked to do things with his father. He was interested in geology, art and outdoor activities. He was a normal child and played with the neighborhood children. The courts of this state have long recognized the difficulty in attempting to prove the pecuniary value of the services of a child, especially one of tender age. The character of the evidence sufficient to support a verdict and judgment in favor of parents will depend upon the age and circumstance of each case. Russell v. Adams, 18 S.W.2d 189 (Tex.Civ.App.—Galveston, 1929, no writ). A frequently cited case is Brunswig v. White, 70 Tex. 504, 8 S.W. 85 (1888), in which this is said:

"Where the testimony shows the bodily health and strength; the sprightliness or want of it, of mind; the aptitude and willingness to be useful in performing services; the mode such faculties are exercised as in useful labor or otherwise; and when from the age or undeveloped state of the child any estimate of value of the services until majority would be matter of opinion, in which no particular or especial knowledge in way of expert testimony could be procured better than the judgment and common sense of the ordinary juror called to the duty of determining such value,—then, upon such testimony, the sound discretion of the jury can be relied on to determine the value, without any witness naming a sum."

We have concluded plaintiffs went as far as they are compelled to under the law. These points are overruled.

Judgment affirmed.

